Bushey *vs.* Culler.

well settled.    See the cases before cited, also *Yates vs. Don-aldson,* 5 *Md. Rep.,* 389.

*Judgment affirmed.*

( Decided March 12th, 1867. )

JACOB M. BUSHEY *vs.* HENRY CULLER.

ARBITRATION AND AWARD: EVIDENCE: NOTICE.—Where from the nature of a submission the judgment of arbitrators may be influenced or enlightened by the adduction of evidence, the parties are entitled to notice of the time and place of their proceeding to investigate the matters submitted to them.

APPEAL,—WILL NOT LIE FROM RULING OF INFERIOR COURT ON MATTERS WITHIN ITS DISCRETION.—Where the decision of the inferior Court is in conformity with a rule of that Court, which it had the discretion to adopt, to preserve order in the trial of causes, and to promote the dispatch of business, the Appellate Court will *not* on appeal reverse such decision.

JURISDICTION OF CIRCUIT COURTS, AS TO AMOUNT RECOVERED: PRACTICE: NON PROS.,—JUDGMENT OF.—In an action *ex-contractu,* in the Circuit Court the juris-diction must depend upon the amount recovered; and where that is below the jurisdiction of the Circuit Courts, as fixed by law, a judgment of *non pros.* may be entered.

APPEAL from the Circuit Court for Frederick county.

This action was brought January 23rd, 1860, by the appellant against the appellee for breach of a contract between them.    This contract, which is under seal, and bears date the 23rd of October, 1858, provides in substance, that a suit then pending between the parties should be entered settled, and that Culler should remove all obstructions in the channel of Ballinger's creek, causing the water to flow back upon the lands and mill of Bushey, placed there by Culler since Bushey's purchase of the property in 1852, the

intent being that Bushey should have secured to him the same free and unobstructed use of the waters of this creek, and the same immunity from overflow and damming back thereof that he enjoyed immediately prior to his said purchase; and in order to accomplish these results, it was agreed that Culler should lower his dam to such extent as shall be judged necessary by Samuel Hargate and George Thomas, they to select a third person in case of disagreement, who shall determine how much the said dam shall be lowered, and their determination shall be final and conclusive, "which said determination shall be reduced to writing and signed by said three persons, or a majority of them, and shall specify the number of feet or inches which shall be taken off the top of said dam by said Culler, and a duplicate copy of said determination shall be furnished by said persons who may concur in and sign the same, to said Bushey and to said Culler. And it is further understood and agreed, that if at any time within one year from the date of said determination, the said Bushey shall think or find that said dam shall not have been lowered by said Culler, in compliance with said determination first hereinbefore mentioned to be made sufficiently to accomplish the results aforesaid, that is to say, that the number of feet or inches to be specified in said first mentioned determination, by which said dam shall be lowered, have not been in fact sufficient to accomplish the results aforesaid, it shall be the right and privilege of said Bushey again to apply to the said Hargate, Thomas, and said third person to be selected by them, or to a majority of them, whose duty it shall be immediately to examine into the facts which may be stated by said Bushey, and if they, or a majority of them, shall determine that said dam ought to be yet further lowered for the full protection of the property of said Bushey from injury, the persons so determining shall reduce to writing and sign said determination, and shall specify therein the

number of inches by which said dam shall be further reduced, and shall furnish duplicate copies thereof to said Bushey and said Culler, and said Culler shall within a reasonable time after being furnished with said determination, cut down or lower said dam the number of inches which shall be so specified and determined. And it is agreed that the opening to be left by said Culler at the top of said dam for the free passage of the water over said dam, shall be at least thirty feet in width. To the faithful performance of this agreement, the parties hereto bind themselves each to the other, in the penalty of one thousand dollars, to be recovered from the party who may violate this agreement, by the other party hereto."

The declaration sets out the agreement, and alleges the first determination to have been made by Hargate and Thomas, on the 15th of December, 1858, requiring the dam to be lowered thirteen inches; that within less than one year thereafter, the plaintiff finding the dam had not been lowered sufficiently to accomplish the results intended, again applied to Hargate and Thomas, who thereupon, on the 17th of October, 1859, made a second determination, that the dam ought to be yet further lowered six inches, making nineteen inches in all that the dam should be lowered, and that each of these determinations were reduced to writing, signed by the parties, and duplicates furnished as the agreement required;—breach, that the defendant did not lower the dam the number of inches specified in these determinations, and did not leave thirty feet opening at the top, and did not remove the obstructions, &c.

The defendant pleaded, 1st, that he did lower his dam the number of inches specified in the first and second determinations, according to the agreement, and did leave the opening, remove the obstructions, and secure the plaintiff the free use of the water to which he was legally and of

right entitled under the agreement, and the legal awards and determinations of said Hargate and Thomas ; 2nd, that before the 15th of December, 1858, to wit, on the 23rd of October, 1858, said Hargate and Thomas did determine the dam should be lowered 11¼ inches, and afterwards, on the 15th of December, 1858, on the application of the plaintiff, they examined the dam a second time, and determined the same should be lowered 1¾ inches further, and did reduce to writing and sign their awards and determinations as aforesaid, and delivered a duplicate copy thereof, and that he did lower his dam the 13 inches, so awarded and determined ; that he did leave the opening, &c., and he denies that said Hargate and Thomas made any award under and in pursuance of the agreement, on the 17th of October, 1859, or at any other time after the 15th of December, 1858.

The plaintiff joined issue on the first plea, and replied to the second, that Hargate and Thomas did not, in pursuance of the agreement, determine, on the 27th of October, 1858, that the dam should be lowered eleven and a quarter inches, and did not afterwards, on the 15th of December, 1858, in pursuance of said agreement, determine the same should be lowered one and three-quarter inches further, but that they did, on the 15th of December 1858, determine the dam should be lowered by the defendant thirteen inches ; and afterwards, on the 17th of October, 1859, did determine the defendant should lower his dam six inches further, making nineteen inches in all, and it was his duty to take down his said dam nineteen inches, which he has failed and refused to do, and that the said Hargate and Thomas did make the award or determination of the 17th of October, 1859, in pursuance of said agreement.

Issue was joined on this replication, and the case was tried in October and November, 1860. In the course of

the trial, two exceptions were taken by the plaintiff, and five by the defendant.

*Defendant's 1st Exception.* The plaintiff to maintain the issue on his part, offered in evidence the agreement *as before* set forth, the execution of. which by both parties was admitted, and further proved by Samuel Hargate, a competent witness, that he is the same person named in said agreement, and that he and George Thomas, of Henry, the other party named in said agreement, proceeded to the discharge of the duties specified in said agreement to be performed by them, and offered in evidence the following determination or award :

"The undersigned, being the persons named in an article of agreement executed by and between Jacob M. Bushey and Henry Culler, bearing date on the 23rd day of October, in the year, 1858, hereby certify and state, that we proceeded to discharge the duties imposed on us by said agreement, and that no disagreement between us having occurred, we did not select any third person, and that having duly considered the matters mentioned and specified in said agreement, we have this 15th day of December, in the year 1858, determined, and do hereby determine, that the said Henry Culler shall lower the dam erected by him, or by his authority, in and across the bed or channel of Ballinger's creek, thirteen inches, in order to prevent all overflow of the property of said Bushey, and all injury whatever to the property or mill of said Bushey, and that said Culler take off from the top of said dam to the extent of thirteen inches, which we hereby specify and reduce to writing, in conformity with the terms of said agreement."

And proved by said witness, that he and said Thomas made and signed the same, and furnished a duplicate copy thereof to the plaintiff and defendant each. That sometime in October, 1859, the plaintiff again applied to the witness and the said Thomas, and stated to them that he

found said dam had not been lowered by the defendant sufficiently to accomplish the result of protecting the plaintiff's mill and property from injury from the overflow or damming back of the waters of Ballinger's creek, occasioned by the dam or obstructions which the defendant had placed or caused to be placed in the bed or channel of said creek, and that the number of inches specified in said determination of 15th of December, 1858, by which said dam was to be lowered, had not in fact been sufficient to accomplish that result, and requested the witness and said Thomas to examine into the facts stated by him, and to determine in conformity with said agreement, whether or not said dam ought to be yet further lowered for the full protection of the plaintiff's property from injury, and that the witness and said Thomas did so examine. And the plaintiff here offered in evidence the determination of the 17th of October, 1859 :

"The undersigned, being the persons named in an article of agreement executed by and between Jacob M. Bushey and Henry Culler, dated October 23rd, 1858, hereby certify and state, that we proceeded to discharge the duties imposed on us by said agreement, and no disagreement between us having occurred, we did not select a third person, and having duly considered the matters mentioned and specified in said agreement, we met on the 17th day of October, 1859, and have determined that the said Henry Culler shall lower or take off from the top of the dam six inches in addition to what we determined should be taken down or lowered by our former determination, on the 15th day of December, 1858, making in all nineteen inches that said dam is to be lowered or taken down from the top thereof, by the said Henry Culler ; all of which we hereby specify and reduce to writing, in conformity with the terms of said agreement."

And proved by said witness, that he and said Thomas

had made and signed the same as it purports, and had fur-nished duplicate copies thereof to the plaintiff and defendant each.

The determination of the 17th of October, 1859, was received in evidence subject to an agreement between counsel, that if it should appear from testimony to be offered by the defendant, that it was inadmissible in evidence, such question might be raised whenever said evidence was introduced.

The defendant then on cross-examination of said witness, (by agreement between counsel, that the testimony should be received subject to exceptions, and that if, when heard, it should be inadmissible, such question might be raised after the same was in, and it might be ruled out if deemed by the Court inadmissible,) proved that he and said Thomas, on the same day of the execution of said agreement, went to the dam in question and examined the same, and determined, or thought that eleven and a quarter inches ought to be taken off the top of said dam by the defendant, in order to protect the mill and property of the plaintiff from injury, occasioned by the waters of Ballinger's creek being dammed back by said dam, and that they marked on said dam eleven and a quarter inches, which the defendant ought to take off; that the plaintiff and defendant were both present; that in two or three days thereafter, the defendant took off from the top of said dam eleven and a quarter inches; that a few days afterwards the plaintiff told the witness and said Thomas, that the eleven and a quarter inches which had been taken off the top of said dam by the defendant, did not remedy the injury of which he had complained, and that he wished them to come again when convenient, and see whether the dam required further lowering; that on the 15th of December, 1858, the witness and Thomas again went to said dam and determined that the same should be taken down one and three-quarter in-

ches more, making thirteen inches in all; and that in making their determination of the 15th of December, 1858, the witness and said Thomas embodied therein, that is to say, in the paper of that date offered in evidence, their proceedings of both days, the 23rd of October and 15th of December, 1858; that on the 23rd of October, there was no adjournment by the witness and said Thomas to any future day, and they would not have gone again to said dam if the plaintiff had not said to them that the injury of which he complained was not remedied as hereinbefore stated, and requested them to inspect said dam and see if any further reduction was necessary; and that no previous notice was given to either party of the meeting of Hargate and Thomas, on the 17th of October, 1859, at said dam, and that the defendant was not present when they met and made *determination* of that date.

On re-examination by the plaintiff, the witness proved, that after the plaintiff had applied to the witness and Thomas, in October, 1859, as before stated, the witness and said Thomas appointed a day in October, 1859, but prior to the 17th, on which they would meet at said dam to examine into the facts alleged by the plaintiff, and to determine whether said dam should be yet further lowered, according to the terms of said agreement of the 23rd of October, 1858, and gave notice to the plaintiff and defendant of said intended meeting prior to the 17th of October, 1859, and the place; and that on said day, the witness and said Thomas were on their way going to said dam for the purpose aforesaid, when they were met by Philip Culler and Henry Culler, Jr., two sons of defendant, (the defendant not being present,) who refused permission to the witness and said Thomas to go said dam, or enter on the premises of said defendant for said purpose; that said dam is on the premises of the defendant, which premises were in the occupancy and possession of Philip Culler, one of said

sons ; that said Phillip Culler and Henry Culler, Jr., were present with their father, the defendant, on all the occasions when the witness and said Thomas had been at said dam in discharge of the duties imposed on them by said agreement, except on the 17th of October, 1859, when none of them were present, that is, the defendant or his two said sons ; and that the witness and said Thomas gave previous notice to both parties, of the time and place of the meeting of the 15th of December, 1858.

Thereupon, and in accordance with the agreements of counsel before stated, the plaintiff, by his counsel, raised the question that the testimony of said Hargate, produced on cross-examination by the defendant, was not admissible and competent testimony for the purpose of showing that a parol determination or award had been made by said Hargate and Thomas on the 23rd of October, 1858, or for the purpose of shewing that the plaintiff had waived the necessity for reducing to writing any determination which might be made by said Hargate and Thomas under said agreement, or for any of the purposes for which the same was offered, and prayed the Court to exclude the same for such purposes, and to instruct the jury that the same was inadmissible, and ought not to be considered by them for said purposes, or either of them, and for the purpose of proving that a determination or award had been made by Hargate and Thomas, (under the agreement between the plaintiff and defendant offered in evidence,) on the 23rd day of October, 1858, which determination or award was not then reduced to writing, but was acquiesced in by the plaintiff and defendant, both being present at the making thereof, and that the defendant fully carried out, performed and fulfilled said determination or award, and that the same was afterwards embodied with another determination of said Hargate and Thomas, into and as part of the written determination now in evidence, dated 15th of December,

Bushey vs. Culler.

1858 ; and to prove a waiver by the plaintiff and defendant of the requirement that the award or determination of the 23rd of October, 1858, should be reduced to writing under said agreement of the 23rd of October, 1858. And at the same time and by agreement between counsel, in in order that both questions may be considered and determined together, the defendant moved the Court to withdraw as evidence and exclude from the consideration of the jury the paper purporting to be the award or determination of the 17th of October, 1859, because the facts disclosed on the cross-examination by defendant of said witness, Hargate, above recited, shew that the said Hargate and Thomas were *functi officio* after the 15th of December, 1858, and had no legal authority to make a determination or award at the date of said paper of 17th of October, 1859, under the agreement between the plaintiff and defendant of the 23rd of October, 1858, offered in evidence in this cause. The agreements between counsel heretofore stated, were not to be understood to waive the right of appeal by either party.

And thereupon the Court ruled that the said evidence of the witness, Hargate, on cross-examination, which is excepted to as aforesaid, by the plaintiff, is inadmissible and incompetent for the purpose for which the same is offered, and excluded the same, and instructed the jury that the same is inadmissible and ought not to be considered by them for said purpose, and the Court further decided that the said paper or award of the 17th of October, 1859, is admissible and competent testimony, and refused to withdraw and exclude the same from the consideration of the jury, to which said several rulings and decisions of the Court, the defendant by his counsel excepted.

*Plaintiff's 1st Exception.* After the evidence contained in the foregoing bill of exceptions had been given to the jury, which is hereby prayed to be taken as part of this bill of

exceptions, the plaintiff further to maintain the issue on his part, proved by George Thomas, of Hy., a competent witness, that he is the same person named in the article of agreement between the plaintiff and defendant of the 23rd of October, 1858, and that the witness and Samuel Hargate, the other party named in said agreement, made and signed the determination offered in evidence of the 15th of December, 1858; that afterwards, in October, 1859, the plaintiff applied to the witness and said Hargate, as set out and detailed in the testimony of said Hargate in the 1st bill of exceptions, and that said Hargate and the witness made and signed the paper or determination of the 17th of October, 1859, and offered in evidence both said determinations of the 15th of December, 1858, and 17th of October, 1859, set out in the 1st bill of exceptions, and that witness and said Hargate furnished duplicate copies of both said determinations to the plaintiff and defendant each, immediately after the same were made and signed respectively.

The defendant, then, on cross-examination of said witness, asked and proposed to prove by him, that the witness and said Hargate did not give to the defendant previous notice of the time and place when and where they met and made said determination of the 17th of October, 1859, but the plaintiff objected to the admissibility of said proof, and the Court overruled said objection, and permitted said evidence to be offered to the jury; whereupon the plaintiff excepted.

*Plaintiff's 2nd Exception.* After the evidence contained in the foregoing bills of exception, which is hereby prayed to be taken as part of this bill of exception, had been given to the jury, the defendant proved by said George Thomas, of Henry, that he did not give notice to the defendant of the time and place of meeting, appointed by them, said Hargate and Thomas, on the 17th day of October, 1859; and on re-examination of said witness by the plaintiff, the plaintiff asked said witness whether witness and said Har-

gate had not appointed a day in October, 1859, after they had been applied to by the plaintiff as aforesaid, and prior to said 17th, to meet at said dam for the purpose of examining into the facts stated by the plaintiff, and determining whether said dam ought to be yet further lowered, and whether they had not given prior notice to the defendant of said appointed day, and whether the defendant or his agents had not refused permission to said Hargate and witness to go to said dam on said day, and had not forbidden them to do so, and whether they, said Hargate and witness, had not forborne to go to said dam said day, in consequence of the refusal of permission by said defendant or his agents, and whether subsequently to said appointed day, the defendant or his agents did not notify witness and said Hargate that said refusal and objection were withdrawn, and they were at liberty to go to said dam for said purpose, and whether they did not immediately go and make and sign said determination of the 17th of October, 1859 ; and asked witness to state all the facts in relation thereto ? but witness stated that he had forgotten all the facts and circumstances referred to in said question, and could not answer in relation thereto.

The plaintiff then proposed to re-call said witness, Hargate, and to prove by him that he and said George Thomas, of Henry, had appointed a day in October, 1859, prior to the 17th day of said month, for the purpose of meeting at said dam, in consequence of the prior application of the plaintiff, and of examining the facts stated by said plaintiff, and of determining whether said dam ought to be yet further lowered, as stated in his testimony contained in defendant's 1st bill of exceptions, and had given notice to the defendant of said appointed day, and that said appointed day was very shortly prior to said 17th day of October, and that on said appointed day the witness and said Thomas went to the premises on which said dam is

situate, and near to said dam, and were on their way to said dam when they met Philip Culler and Henry Culler, Jr., two sons of defendant, and told them that they were going to said dam for the purposes aforesaid, and that said Philip Culler and Henry Culler, Jr., then forbid witness and said Thomas going to said dam, and said they had no right to do so, and they would be trespassers if they did so, and that said Philip Culler lived on said premises, and was in possession thereof, and that he and said Henry Culler, Jr., had, with the knowledge and consent of the defendant as his agents, on all occasions, and in all matters relating to said controversy between the plaintiff and defendant, relating to said dam, and the obstructions in said creek, and that on all occasions, when witness and said Thomas had been at said dam and on said premises, in the discharge of the duties by them specified in said agreement between the plaintiff and defendant, the said Philip Culler and Henry Culler, Jr., had been present with the defendant, acting as his agents; that in consequence of being forbidden as aforesaid by said Philip Culler and Henry Culler, Jr., the witness and said Thomas did not then go to said dam for said purpose; that on the next day or very shortly afterwards, the witness and said Thomas were notified by said Philip Culler, that the objection made to their going to said dam for said purposes was withdrawn, and that they were at liberty to go to said dam for said purposes whenever they thought proper, that on the succeeding day or very soon thereafter, the witness and said Thomas did go to said dam, and made and signed said paper of the 17th of October, 1859; that the defendant is a very old man, and that his said sons have for many years acted as agents of the defendant in all matters relating to said property. But the defendant objected to re-calling and re-examining said witness as proposed by the plaintiff, because the witness had been examined-in-chief, cross-

examined and examined in reply by the plaintiff and defendant respectively, and had been then dismissed from the witness' stand, and another witness called by the plaintiff and examined, and the defendant objected generally to the re-call and re-examination of said witness, Hargate, as aforesaid, and also, because said re-call and re-examination are prohibited by the following, which the defendant claims to be a rule of Court. (The named rule of Court herein referred to, cannot be found by the Clerk of the Court, and is not amongst the general rules of this Court.)

Whereupon the counsel for the plaintiff stated to the Court, that by inadvertence, he had omitted to examine the said witness fully in regard to the facts stated in his present offer, that said inadvertence had been caused by the fact, that when the former examination of said witness set out in the 1st bill of exceptions was conducted, the counsel for the plaintiff understood and believed, that both the plaintiff and defendant were conducting their examinations for the purpose of bringing out the facts connected with the points mentioned in the defendant's 1st bill of exceptions, under an agreement that they were to do so, in order to present those points to the Court as speedily as possible, and that in his endeavor to present the facts connected with those points, in accordance with said supposed agreement, the said inadvertence had occurred, but here the counsel of the defendant denied, and the denial is inserted at their request, that the agreement mentioned in defendant's first bill of exceptions, had any connection with the inquiry, as to the giving of notice by said Hargate and Thomas, to said defendant ; and the counsel of the plaintiff further suggested and stated, that he could not be precluded by said alleged rule, because the same had never in fact been filed with the clerk, and recorded amongst the rules of the Court, and could not therefore be considered legally as a rule of Court binding on parties, but that the

same had been in fact for several years, and ever since the same had been written by the Court, kept by the judge in his private drawer, and requested the Court to certify this · fact in any bill of exceptions which might be taken.— Whereupon the Court refused to allow said witness to be re-called and examined by the plaintiff, and now certifies, that the said rule has never in fact been filed with the clerk, and has never been recorded amongst the rules of Court, but has been kept by the judge in his private drawer, ever since the same was written ; and further certifies, that the same has been frequently read by the Court to the bar, and has been practised on, whenever any question has arisen under the rule. Whereupon the plaintiff excepted to said refusal.

It is unnecessary to refer to the· four remaining exceptions of the defendant.

The jury rendered a verdict for the plaintiff and assessed the damages at one dollar. The plaintiff moved for a *new trial,* and the defendant moved that a judgment of *non pross.* be entered, because the amount of the verdict is not sufficient to give the Court jurisdiction, the suit being an action *ex contractu* on a covenant. These motions were made the 3rd of November, 1860, the day after the verdict was rendered, and the Court held them under advisement until the 6th of December, 1865, when the motion for a new trial was overruled and a judgment of *non pross.* ordered to be entered, and from this judgment so entered, the plaintiff appealed.

The cause was argued before Bowie, C. J., and Bartol, Goldsborough and Weisel, J.

*O. Miller* and *Wm. P. Maulsby* for the appellant.

1st. There was error in the action of the Court below in directing a *non pross.* to be entered. This suit is upon an

agreement under seal, where the penalty is fixed at $1,000. Over such a case a Justice of the Peace had no jurisdiction prior to the passage of the Act of 1852, ch. 239, the provisions of which are embodied in the Code, Art. 51, secs. 13 to 16 inclusive. That Act, for the first time, extended the jurisdiction of justices "to all suits on bonds with penalty exceeding one hundred dollars, where the sum due and claimed does not exceed one hundred dollars." This Act also provides, that "in all cases where the amount claimed or the thing in action exceeds the sum or value of fifty dollars, and Justices of the Peace have jurisdiction, the several Circuit Courts for the counties shall have concurrent jurisdiction with Justices of the Peace." The test of jurisdiction here fixed is the amount due and claimed, and not the amount recovered. *O'Reiley, vs. Murdock* 1 *Gill,* 33. *Beall vs. Black,* 1 *Gill,* 203. *Carter vs. Tuck,* 3 *Gill,* 251. *Ott vs. Dill,* 7 *Md. Rep.*, 251.

2nd. There is also error in the ruling of the Court in the plaintiff's first exception. That ruling is, that it was competent for the defendant to prove, in order to defeat the action, that Hargate and Thomas, the parties named in the agreement, did not give the defendant previous notice of the time and place when and where they met and made the determination of the 17th of October, 1859. The general principle, that arbitrators must give notice to the parties of the time and place of their meeting, to act upon the matters submitted to their arbitration, otherwise their award will be void, as announced in the case of *Emory vs. Owings,* 7 *Gill,* 494, and other like cases, is admitted; but this general rule is qualified by the decision in *Bullitt vs. Musgrove,* 3 *Gill,* 31, so that it is made applicable only to cases where, from the nature of the submission, the judgment of the arbitrators may be influenced or enlightened by the adduction of evidence. It is insisted, that by the terms of this agreement, the parties named therein to make deter-

mination of the number of inches the dam ought to be lowered, are not, in the strict sense of the term, arbitrators, and the agreement is not strictly a submission to arbitrators of matters in dispute between the parties. By the terms of the agreement, all dispute was settled, and Culler agreed to lower his dam to the extent these named parties should deem necessary to accomplish the result specified. The whole matter was left to their judgment upon their own observation of natural results. No notice seems to have been contemplated by the parties, and none was necessary. But the ruling in question goes further than saying that notice was necessary of the time and place of meeting to act upon the matters submitted to their arbitration ; it declares that notice was necessary of the time and place of meeting and making the award. It is not necessary that the parties should have notice of, or be present at the meeting of the arbitrators, at which the award is made up and signed. *Roloson vs. Carson*, 8 *Md. Rep.*, 208.

3rd. There was also error in the Court's ruling in the plaintiff's second exception. The recalling of the witness, Hargate, for the purpose, and under the circumstances stated in this exception, and in the record, was the plaintiff's right, and to deprive him of it would have been a manifest injustice. Surely he could not be deprived of this right by a rule of Court which was never filed with the clerk, and not placed amongst the general rules, but which was kept locked up by the judge in his private drawer. Such a rule is no rule at all,—it is not binding on suitors or parties.

*Wm. J. Ross* and *Grayson Eichelberger* for the appellee.

The appellee submits, that there is no error in said judgment of the Court, and that the same should be affirmed, because the Circuit Courts have no jurisdiction in actions *ex contractu*, where the amount recovered does not exceed

fifty dollars. *O'Reilly vs. Murdock*, 1 *Gill*, 33. *Beall vs. Black*, 1 *Gill*, 203. *Ott vs. Dill*, 7 *Md. Rep.*, 251. *Abbott vs. Hatch*, 13 *Md. Rep.*, 336. 1 *Code*, 199, 355. *Act of* 1852, *ch.* 239.

The jurisdiction of the Circuit Courts has not been changed by the New Constitutions of 1850 or of 1864, but has been confirmed by both. *Constitution of* 1850, *Art.* 4, *sec.* 8. *Constitution of* 1864, *Art.* 4, *sec.* 25. The case of *Ott vs. Dill*, was under the Constitution of 1850. The action in this case being on a covenant, is an action *ex contractu.* 1 *Tidd's Pr.*, 1. 1 *Chitty's Pl.*, 110, ( 6th *American Edition.*) The verdict in this case being for one dollar, the Court below had no jurisdiction, and judgment of *non pross.* was properly entered.

BARTOL, J., delivered the opinion of this Court.

In our opinion, the question presented by the plaintiff's first exception is settled by the decision in *Bullitt vs. Musgrave*, 3 *Gill*, 32. "Where from the nature of a submission the judgment of arbitrators may be influenced or enlightened by the adduction of evidence, the parties are entitled to notice of the time and place of their proceeding to investigate the matters submitted to them." Such was the nature of the submission in this case; there was consequently no error in admitting evidence to prove that such notice was not given to the defendant.

The ruling by the Circuit Court stated in the appellant's second exception, is not ground for reversal, because it was in conformity with a rule of that Court, which it had the discretion to adopt to preserve order in the trial of causes, and to promote the dispatch of business.

The only remaining point made by the appellant, is that the Circuit Court erred in directing a judgment of *non pross.* to be entered on the verdict.

The suit is upon an agreement under seal wherein the

penalty is fixed at $1,000 ; the verdict was in favor of the plaintiff for one dollar.

In construing the several Acts of Assembly regulating the civil jurisdiction of Justices of the Peace, ( prior to the Act of 1852,) the Court of Appeals determined that while in actions for *torts*, the jurisdiction depended upon the amount of damages claimed, the test of jurisdiction in actions of contract was the amount recovered. *O'Reiley vs. Murdock*, 1 *Gill*, 33. *Beall vs. Black*, 1 *Gill*, 203. *Carter vs. Tuck*, 3 *Gill*, 251. The Act of 1852, ch. 239, which enlarged the civil jurisdiction of the Justices of the Peace, departed somewhat from the language of the previous Acts, and in its first section provided, that they should have jurisdiction "in all cases for the enforcement of contracts, and to obtain redress for wrongs, when the debt or damages laid or claimed shall not exceed one hundred dollars."

In *Ott vs. Dill*, 7 *Md. Rep.*, 251, it was held that the Act of 1852, did not change the test of jurisdiction before established in cases of contract ; but in such cases left it to depend upon the amount recovered, and not the sum laid or claimed in the declaration.

The *Code, Art.* 51, *sec.* 13, pursues substantially the same language as the Act of 1852, above cited, and ought to receive the same construction. This being a suit upon a contract, the jurisdiction, as settled by the case of *Ott vs. Dill*, must depend upon the amount recovered, and that being below the jurisdiction of the Circuit Court, the judgment of *non pross.* was properly entered.

In defining the jurisdiction of Justices of the Peace in suits on bonds with a penalty, the language of the Code is not the same as the Act of 1852. But this case does not come within that provision, the instrument sued on is an agreement not a bond, and is governed by the decision of *Ott vs. Dill.*

*Judgment affirmed.*