Syllabus.    Statement of the case.

NATHANIEL NORTON

*v.*

STEPHEN F. GALE.

*Filed at Ottawa June 16, 1880.*

95  533
28a 575
95  533
128   93
95  533
149  418

1. STATUTE OF FRAUDS—*contract as fixing sum to be paid.* The Statute of Frauds will be satisfied by such a statement in a written contract as ascertains the price to be paid, although it mentions no specific sum, as for instance, if to pay a price to be settled by arbitration, or upon the valuation of appraisers to be selected by the parties.

2. Where a lease of lots, executed by both parties, fixed the annual rent for the first five years, and then provided that the amount of the rent to be paid annually for the next five years should be six per cent on the appraised value of the premises, to be ascertained by appraisers, one to be selected by each party, and they to select another, in case they could not agree, it was held that the contract was not within the Statute of Frauds as to the rent to be paid for the second five years.

3. ARBITRATION—*what is—notice of time of meeting.* Where the parties to a lease provide for rent to be paid yearly, at six per cent on the appraised value of the demised premises, to be ascertained by the selection of property holders, this is not a submission to arbitration, and no notice to the parties is necessary before making the appraisement, unless the lease so requires, and the finding of the appraisers, when selected, will be conclusive upon the parties, except for fraud.

APPEAL from the Appellate Court for the First District; the Hon. THEO. D. MURPHY, presiding Justice, and the Hon. GEO. W. PLEASANTS and Hon. JOSEPH M. BAILEY, Justices.

This was an action by Gale against Norton on three leases of vacant lots in Chicago, executed by the former to the latter on the first of February, 1872, to run for a term of fifty years; one, of five lots, for a yearly rent for the first five years at $1000 per annum, payable quarterly in advance; one, of five lots, at $1000 per annum for the first five years, payable the same way, and one, of ten lots, at $3100 per annum for the first five years, payable quarterly in advance. Each lease contained the following clause:

" And the party of the second part further agrees that at least thirty days before the expiration of said first five years he will choose one disinterested holder of real property of the city of Chicago, and notify in writing said party of the first part, or his agent or attorney, of such choice, and party of the first part will thereupon choose a like holder of real property, which said two parties shall at once proceed to appraise the cash value of said premises, exclusive of all improvements thereupon, and in case they can not agree upon the same, shall choose a third disinterested holder of real property, and the award of the majority of the appraisers shall be final and binding; and thereupon, for the next succeeding five years from the end of said first five years, said party of the second part will pay as rent for said premises, quarterly as aforesaid, a sum for each and every year of said five years equal to six per cent per annum on the appraised value of said premises."

Before February 1, 1877, the expiration of the first five years, Norton selected as his appraiser James N. Clark, and Gale selected as his appraiser, George W. Fuller, and the two made and reduced to writing and signed and sealed the following appraisement:

" We, the undersigned, disinterested holders of real property in the city of Chicago, in the county of Cook, and State of Illinois, who were duly chosen as appraisers, to-wit: James N. Clark, who was chosen by and on behalf of Nathaniel Norton, and George W. Fuller, who was chosen by and on behalf of Stephen F. Gale, to appraise the cash value of certain lots, pieces and parcels of land, situate in the city of Chicago, and particularly mentioned and described in three (3) certain leases of said premises, bearing date, respectively, on the first day of February, A. D. 1872, made and executed by the said Stephen F. Gale, as the party of the first part, and the said Nathaniel Norton, as party of the second part; to which said three (3) leases reference is hereby made for a particular description of the premises aforesaid, and which said three (3) leases are hereby made a part and parcel hereof,

do hereby, in accordance with the terms, conditions and provisions of the three leases aforesaid, make, adjudge and appraise the cash value of the premises aforesaid, and as hereinafter described, as follows, to-wit:

"The lots numbered one (1), two '(2), three (3), four (4), five (5), six (6), seven (7), eight (8), nine (9) and ten (10), in S. F. Gale's subdivision of block number fifty-two (52) in Carpenter's addition to Chicago, are hereby valued at the sum of two hundred dollars ($200) in cash per foot front upon Washington street, excluding all improvements thereupon. The lots numbered nineteen (19), twenty (20), twenty-one (21), twenty-two (22), twenty-three (23), twenty-four (24), twenty-five (25), twenty-six (26), twenty-seven (27), and twenty-eight (28), in S. F. Gale's subdivision of block numbered twenty-six (26), in Carpenter's addition to Chicago, are hereby valued and appraised at the sum of one hundred dollars ($100) in cash per foot front upon West Lake street, excluding all improvements thereupon.

"In witness whereof, we have herewith set our respective hands and seals, this 15th day of January, A. D. 1877.

"JAMES N. CLARK,     [Seal.]
"GEO. W. FULLER.     [Seal.]"

Gale claimed that, under this appraisement, there was due for the first quarter of the second five years, $1125, to recover which the action was brought.

By pleas, by objections to evidence offered by Gale, by evidence offered by himself and by instructions asked, Norton raised the question, on the trial in the circuit court, whether the appraisement was binding and conclusive upon him.

The ruling of the circuit court, upon all the contested points, was in favor of Gale. Norton excepted, and took the case by appeal to the Appellate Court for the First District, and that court, on the 26th of June, 1878, affirmed the judgment of the circuit court.

Gale appeals from that judgment of the Appellate Court, and assigns numerous errors, sufficiently noticed in the opinion.

Messrs. MILLER & FROST, for the appellant:

A verbal lease of land for a term exceeding a year is void. *Olt* v. *Lohnas,* 19 Ill. 576; *Granjang* v. *Merkle,* 22 id. 249; *Wheeler* v. *Frankenthal,* 78 id. 124.

The entire contract, including the *price,* must be in writing. *Wood* v. *Davis,* 82 Ill. 311.

If made by an *agent, his authority* must be in writing. Rev. Stat. chap. 59, page 540, sec. 2.

The contract upon which the recovery was had was incomplete until the price (an essential part of it) was agreed on or fixed by the arbitrators under a written submission. What the parties could not do verbally, could not be legally done by arbitrators under a verbal submission. *French* v. *New,* 28 N. Y. (Court of Appeals), 147, 150.

Such a verbal agreement would have been a nullity. "A verbal submission is valid in all cases where the subject matter is such that a verbal agreement directly between the parties in the terms of the award would prevail. But where the law, as for instance the Statute of Frauds, requires a contract to be in writing, then both the submission and the award must be in writing." Cadwell on Arbitrations, Vermont ed. 1853, p. 36; *Copeland et al.* v. *Wading River Reservoir Co.* 5 Mass. 397.

"Fraud in an award may be shown either at law or in equity." *Newlan* v. *Dunham,* 60 Ill. 233.

The appointment of arbitrators is a necessary part of a submission. It is not complete until the persons to whom it is made are selected.

Where the law, as, the Statute of Frauds, requires a contract to be in writing, then both the submission and award must be in writing. *Walter* v. *Morgan,* 2 Cox, 369; *McMullen* v. *Mayo,* 8 S. & M. 298; *Copeland* v. *Reservoir Co.* 105 Mass. 307; *Evans* v. *McKinney,* 6 Litt. 264; *Martin* v. *Chapman,* 1 Ala. 278; *Davy* v. *Farr,* 7 Cranch, 171.

That the decision of the person fixing the valuation of the property is an award, counsel cited *Peters* v. *Newkirk,* 6 Cow.

103, *Smith* v. *Cody*, 5 Daly, 401, *Underhill* v. *Van Cortland*, 2 Johns. Ch. 339, *Dickenson* v. *Railroad Co.* 7 W. Va. 390, and *Kelly* v. *Crawford*, 5 Wall. 790.

If the arbitrators gave no notice to the parties of the hearing, their award is utterly void. *Peters* v. *Newkirk*, 6 Cow. 106; *Bushey* v. *Culler*, 26 Md. 534; *Thornton* v. *Chapman*, 2 Cr. C. C. 244; *Gafby* v. *Hartford Bridge Co.* 4 Conn. 143; *Ingraham* v. *Whitman*, 75 Ill. 25; *Falconer* v. *Montgomery*, 4 Dal. 222; *Wilson* v. *Boor*, 40 Md. 483; *Hubbard* v. *Hubbard*, 61 Ill. 228; *Moran* v. *Bajent*, 16 Abb. Pr. (N. S.) 303; *Billings* v. *Billings*, 110 Mass. 225; *Thomas* v. *West Jersey Railroad Co.* 24 N. J. Eq. 567; *West Jersey Railroad Co.* v. *Thomas*, 23 N. J. Eq. 431; *Elmendorf* v. *Harris*, 23 Wend. 628; *Lutz* v. *Lithicum*, 8 Pet. 178; *Brown* v. *Liddy*, 11 Hun. 455.

The parties must have a hearing afforded them. *Van Cortland* v. *Underhill*, 17 Johns. 408; *McMahon* v. *New York and Erie Railroad Co.* 20 N. Y. 463; *Eads* v. *Williams*, 3 Eng. L. & E. R. 203; *Phipps* v. *Ingram*, 3 Dowl. 669.

Messrs. WALKER & CARTER, for the appellee:

The submission was in writing, but would have been valid if verbal. *Smith* v. *Douglas*, 16 Ill. 34; Morse on Arb. and Awards, 51.

Appraisers of value are not arbitrators. There was no controversy between the parties. The matter of valuation was submitted to the individual discretion, opinion and judgment of the appraisers. *Leeds* v. *Burrows*, 12 East, 1; *Lee* v. *Hemingway*, 3 Nev. & M. 860; *Jenkins* v. *Betham*, 24 L. J. C. P. 94; *Collins* v. *Collins*, 28 L. J. Ch. 184; *Garred* v. *Macey*, 10 Mo. 160; *Curry* v. *Luckey*, 35 id. 389; Benj. on Sales, sec. 88; Russ. on Arb. 38; Morse on Arb. 40.

"A reference of a collateral fact, or the submission of a particular question forming only a link in the chain of evidence, is not calculated to put an end to the controversy,—it merely substitutes the judgment of the referee in the place

of the evidence on that collateral or incidental matter, leaving the controversy open." Such a decision is not an award, and the reference of such a matter is not a submission to arbitration. *Garr* v. *Gomez*, 9 Wend. 649; *Harris* v. *Bradshaw*, 18 Johns. 26; *Mason* v. *Bridge*, 14 Me. 468; *Oakes* v. *Moore*, 24 id. 214; *Rochester* v. *Whitehouse*, 15 N. H. 468.

The appraisal of the value of property being a matter for the exercise of the individual opinion of the appraisers, witnesses are not necessary. 2 Pars. on Cont. 706, note n; *Eads* v. *Williams*, 31 Eng. L. & E. 202; *Brown* v. *Bellows*, 4 Pick. 178; *Matter of Pearl Street*, 19 Wend. 651; *Brink* v. *New Amsterdam Fire Insurance Co.* 5 Robt. 104; *Matter of John and Cherry Streets*, 19 Wend. 659; *Rochester* v. *Chester*, 3 N. H. 349.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The first objection urged against the judgment below is, "our statute says that no action can be brought upon a contract of this kind unless the contract shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party;" and it is thereupon argued that the appointment of the arbitrators is a necessary part of the submission,—that the submission can not be said to be made until the persons to whom it is made are selected.

The objection is not well urged. All of the terms of the contract upon which suit is brought, required by the Statute of Frauds to be in writing, are in writing. The amount to be paid per annum for the first five years is specifically expressed. The amount to be paid after the expiration of that period is six per cent on the appraised value of the premises,—that is to say, on the "value of the premises." Suppose the language had been simply to pay six per cent on the value of the premises? Surely, that would have been sufficiently definite and certain to have answered the requirements

of the statute. The provision with reference to the appointment of appraisers relates solely to the mode of making proof of value, and is certainly as competent as any other mode of proof of value.

It is said in Brown on the Statute of Frauds, sec. 378: "It is quite obvious that the statute will be satisfied by such a statement as ascertains the price to be paid, although it mentions no specific sum,—as, for instance, if the agreement is to pay a price to be settled by arbitration, or to pay the same for which the property had been previously purchased."

In *Brown* v. *Bellows,* 4 Pickering, 178, it was referred to referees to fix the price to be paid for the property. The referees were not named in the indenture, but it provided that they were to be thereafter chosen. As against the plea of the Statute of Frauds it was held that after the price had been fixed by referees, chosen pursuant to the indenture, it was too late for the defendant to object that, by the Statute of Frauds, the indenture was invalid, because the referees and the price were not ascertained by the indenture itself.

Whether the reference here be called one to arbitrators or simply to appraisers, can, so far as this question is concerned, make no difference. The rule controling is, " *id certum est quod certum reddi potest,*" and has nothing to do with the name by which the third party, to whom the valuation is left, shall be called.

The next, and most serious objection urged against the judgment below, is, the stipulation to refer the question of the value of property to holders of real property in Chicago, as provided in the leases, is a submission of that question to arbitrators, and that the valuation made by Clark and Fuller is an award and not merely an appraisement; and, being an award, it is void, because made without notice to the parties to the submission,—and after refusal to hear appellant's witnesses on the question of value, and argument thereon by his counsel, which evidence and argument, it is claimed, would have shown that the valuation, as made, is unjust to him. There

was no evidence introduced, or offered, showing that the valuation, as made, was not the honest expression of the judgments of the appraisers, and the only question, in reality, is, was appellant entitled to notice and to be heard on the question of value? If he was not, there is nothing in the evidence introduced or offered, showing objectionable conduct in the appraisers.

In one or more of the pleas there may be allegations of fraud, but there was no attempt to support such allegations by proof. And the instructions asked only go to the question of the right of appellant to notice, and to be heard by witnesses and counsel.

The authorities upon the question of notice are not entirely harmonious. In some cases in New York, and notably in *Peters* v. *Newkirk*, 6 Cowen, 103, and *McMahon* v. *The New York and Erie Railroad Co.* 20 N. Y. 463, ruling may be found sustaining the position of the appellant. But the authority of *Peters* v. *Newkirk*, is much impaired by what is said in reference to it in *Elmendorf* v. *Harris*, 5 Wend. 521. It was there said : "As to the appraisement referred to in *Peters* v. *Newkirk*, it could hardly be dignified with the name of an award. Even if it should be so considered, it was not made the foundation of an action." And so what was said in regard to notice, however correctly or incorrectly, was *obiter dicta.* And in *McMahon* v. *The New York and Erie Railroad Co.* there was a provision in the contract requiring the work to be done under the direction and supervision of the engineer, and providing that he should decide every question that might arise between the parties, and that his decision should be final. It was held that his position was not unlike that of an arbitrator, and that his estimates would not be binding, unless they were made upon notice. But this, in principle, is in conflict with the ruling of this court in kindred cases.

In *McAuley* v. *Carter et al.* 22 Ill. 53, the parties to a building contract agreed that the superintendent should pass upon the work and certify as to the payments to be made.

His decision was held to be binding unless fraud or mistake, on his part, should be shown; and it was also held that notice need not be given of the certificate obtained from the superintendent, where the contract does not require it.

*Korf* v. *Lull*, 70 Ill. 420, follows, and approves *McAuley* v. *Carter et al.* and overrules what was said in *Packard* v. *Van Schoick*, 58 Ill. 79, requiring notice in such cases.

There may be found other cases, besides those to be found in the reports of New York, affording sanction to appellant's position, but we do not deem it important to refer to them in detail, and shall content ourselves with briefly referring to some authorities sustaining what we regard as the more reasonable rule.

In *Leeds* v. *Burrows*, 12 East, 1, the plaintiff was the outgoing and the defendant the incoming tenant of a farm, and it had been agreed between them that the referees should value the hay and the spike roll, for which the defendant was to pay, etc. " Le Blanc, J., observed that it was only left to the persons to whom the matter was referred, to put a value upon the articles which the parties had already agreed should be paid for."

In note "a," at the conclusion of the report of the case, it is shown that after a second trial the case came before Lord Ellenborough, C. J., on a motion for a non-suit, upon the ground that the agreement included a reference of a right of action for damages, etc., and he said " that it was only appointing persons to settle an account of what was due between the parties for the value of the different articles. The parties had no contemplation of submitting any differences to the award of arbitrators, and no such terms ought to be imposed upon them against their own meaning and the meaning of the stamp acts."

In *Lee* v. *Hemingway*, 3 Nev. & M. 860, there was an agreement to sell land at a particular price, to be fixed by award. The price was fixed, and one party applied for an attachment under the award, claiming that it was an arbitration; but

LITTLEDALE, J., held otherwise, observing: "It is not properly an arbitration; it is, in effect, an agreement to sell the land, and this is not a settlement of any difference between the parties, but merely something auxiliary to the contract entered into between them for the purpose of the sale of the land, and accordingly upon a breach of the contract you have your remedy, for it is clear that a specific performance would have lain here in that case. It is clear, also, that an action would have lain for damages. But not being an award, because it was not a matter in difference that was referred by these parties, you can not have it by way of attachment."

In *Collins* v. *Collins,* 26 Beavan's Ch. 306, there was a written contract that the purchase money of all the premises agreed to be sold should be determined by Mr. Mason for the vendor, and Mr. Moss for the purchaser, and that they should choose an umpire before entering upon a valuation.

The Master of the Rolls said: "It appears to me that the case of *Leeds* v. *Burrows,* draws the proper and fit distinction between an arbitration, in the proper sense of the term, and an appraisement or valuation, for valuation undoubtedly precludes differences, in the proper sense of the term; it prevents differences, and does not settle any which have arisen."

Russell, in his work on Arbitration, (3d ed.) p. 43, after referring to these cases, says: "The valuer, etc., is not an arbitrator, in the proper sense, unless there have been differences between the parties on the point previous to their submitting it to his decision. A decision which precludes differences from arising, instead of settling them after they have arisen, is, for many purposes, not an award." See Morse on Arbitration and Award, 40.

In *Garred* v. *Macey & Doniphan,* 10 Mo. 161, the agreement provided, that in consideration that A shall give possession of certain public land to B, B shall pay the value of the improvements, to be ascertained by five householders. It

was held that the decision of the persons thus selected was not an award.

In *Currey* v. *Lackey*, 35 Mo. 389, the agreement was to leave to a third person to determine the value between two slaves exchanged. It was held this did not make such person an arbitrator. The court said: "A reference to arbitration occurs only where there is a matter in controversy between two or more parties."

See, also, to a like effect, opinion of Senator SEWARD in *Garr* v. *Gomez*, 9 Wendell, 649; *Mason* v. *Bridge*, 14 Me. 468; *Oakes* v. *Moore*, 24 id. 214; *Rochester* v. *Whitehouse*, 15 N. H. 468.

There was, here, no matter in controversy when the leases were executed, or, for that matter, when the appraisers were selected, and the object was to preclude or prevent the arising of differences, and not to settle differences which had arisen.

The reason that notice of the time and place that arbitrators intend to act upon the matter submitted to them is required, is to enable the parties to present their case by evidence and by argument. Morse on Arbitration and Award, 117. And so notice of the meetings of the arbitrators for the purposes of deliberation and making up the award need not be given, since the parties are not expected to attend. Id. 118.

But where the office of the party to whom the submission is made is limited to a simple appraisal of value, he is expected to act on his own knowledge and opinions only. And hence, neither evidence of witnesses nor statements of parties or counsel is contemplated. 2 Parsons on Contracts (6th ed.), 706, note n; *Eads* v. *Williams*, 31 Eng. L. and Eq. 203.

By the express terms of the leases, the persons to be selected here are not to *ascertain and determine*, from witnesses or otherwise, but simply to "*appraise the cash value of said premises*," etc. They are to be disinterested holders of real property of the city, and one is to be selected by each party. So, it is to be presumed, the design was to select those who would

need no evidence or argument, but be prepared at once to make a valuation. The language used precludes delay, and requires those selected to " *at once proceed,*" not to inquire or hear evidence or argument, but " *to appraise,*" that is to say, fix a valuation on the property. The language, in our opinion, as plainly means this as any language that might have been employed could.

Conceding that we are right in holding that, under this language, appellant would not have been entitled, as a matter of right, to have introduced witnesses, or have been heard, by himself or counsel, on the question of the value of the property, it is quite clear that he was not entitled to notice, for it can not be that a party is entitled to a notice which will enable him to exercise no right or privilege.

We think the judgment of the Appellate Court was right, and it must, therefore, be affirmed.

*Judgment affirmed.*

Mr. JUSTICE DICKEY, dissenting:

I can not concur in this judgment or the reasoning on which it rests. For many purposes, this proceeding was not an arbitration, and the award of the appraisers is not such an award as spoken of in our statutes concerning " Arbitrations and Awards." It was, however, a matter to be determined between the parties by the judgment of the appraisers; a determination by which the parties were to be bound, as by the judgment or decree of a court. In other words, the conclusion reached was to become and be *res judicata,* as to the then value of this property. In all such cases, whether the proceeding be before a court, or before arbitrators or referees or appraisers, or before any other forum, I think the party to be affected thereby is entitled to be heard, if he demand it, and to that end is entitled to notice of the time and place of deliberation or investigation. A party may, no doubt, by contract or otherwise waive this right to notice, and that is the ground on which the cases, as I understand them, of

*McAuley* v. *Carter*, 22 Ill..53, *Korf* v. *Lull*, 70 id. 420, and like cases, rest, in which it is held notice need not be given in cases of building and construction contracts, where the matter to be determined was left to the engineers, superintendent or architect. In that class of cases, in view of the nature of the business, and of the fact that the question was left to the decision of an expert, whose ordinary duties, in the nature of things, gave him the full means of understanding the matter to be by him determined, it was held that, by a fair construction of the contract, the parties *had waived* this right to notice. In these decisions I fully concur. They do not invade the fundamental principle of common fairness and justice which pervades the law in all civilized communities, and which demands that, in all proceedings— judicial or *quasi* judicial—the party *to be bound* thereby must have an opportunity *to be heard*, unless he has expressly or by reasonable or necessary implication waived that right.

In this case there is no express agreement on the part of Norton to waive this right, and I find nothing in the contract from which, by necessary implication, or even reasonable implication, such a waiver ought to be inferred. The men selected were to be disinterested and were to be holders of real property of the city of Chicago. This does not designate them as experts, in any sense. Had it been provided by statute that, in all cases where property is leased by one man to another for a long term of years, at an annual rent equal to six per cent upon the cash value thereof, it shall be the duty of the tenant, in the month of January in each year, to choose one disinterested holder of real property, within five miles of the premises, and of the landlord to choose a like holder of real property, which said persons so chosen shall at once proceed to appraise the cash value of said premises, and in case they can not agree upon the same, they shall choose a third like holder of real property, and the award of the majority of the appraisers shall be final and binding as to the value of the property, for the purpose of fixing the

35—95 ILL.

amount of rent to be paid under such lease for that year,—it seems to me, it could not be said the legislature intended, in such case, to deprive the parties to such a lease of their right to be heard before their interests should be affected by the finding of the appraisers, or that parties making leases of that kind, after the passage of such a statute, had thereby waived their right to a hearing. Nor can I see that the creation of such a forum by contract can have any effect different in this regard from the creation of the forum by statute. The contract is silent on this question and no inference of a waiver is to rest upon a presumption not founded upon anything said in the contract.

The waiver of a right so vital, ought not to be slightly presumed; nor is such to be inferred, unless the words of the contract clearly import that such was the intention of the contracting parties.

This view of the law has for its support decisions where this very question came in judgment.

In *Peters* v. *Newkirk*, 6 Cowen, 103, it appeared that Newkirk had leased to Peters certain premises for a period of three years, but before the time expired the parties agreed to cancel the lease and make a settlement of their accounts. The balance of rent due to Newkirk was agreed to be $87.75, for which Peters gave his due bill, and it was also agreed that Newkirk should take a shearing machine, to be appraised by C. Sturges, in part pay of the due bill. Sturges made the appraisement at $85 in the absence of Newkirk, who was not notified. Subsequently Newkirk made a distress for the $87.75 rent due, whereupon Peters tendered the balance of rent due, after deducting the $85, and demanded a return of the goods, which was refused, and he then brought an action on the case, for distraining his goods when no rent was in arrear, and upon the trial of this action the question arose whether the appraisement was valid, and upon this point the court say: "The appraisal was irregular and not conclusive on the defendant. Both parties should have had notice, so that

an opportunity might be afforded to submit their remarks to the appraiser, and adduce proof if deemed necessary. The plainest dictates of natural justice require that no man shall be condemned unheard. The right to notice was implied in the agreement to submit."

In *Underhill* v. *Van Cortlandt*, 2 Johns. Ch. 339, the defendants leased to Underhill a mill place and land for twenty-one years, and in the lease it was provided, "that at the expiration of the term the mill or mills then standing, and whatever might appertain thereto, should be appraised or valued, by two persons indifferently chosen by the·parties, and in case of their disagreement, by a third person, to be chosen by the two, and the said appraisement should be binding on the parties." Chancellor KENT, in his opinion, treats this agreement precisely as a submission to arbitration, and he applied to their conduct the same rules which are applied to the conduct of arbitrators.

In *Kelly* v. *Crawford*, 5 Wall. 785, there was an agreement between two firms that an accountant should examine their books of account, and ascertain from them the exact amount due from one firm to the other, "the amount so found to be due and owing to be final." It was held the agreement was not a submission to arbitration, nor was the amount found due by the accountant an award, in any such sense as would make them subject to the strict rules governing arbitrations and awards. The court made a distinction between a case where there is something submitted to the judgment or discretion of the person chosen, and one where he is to have no discretion.

In *Thomas* v. *West Jersey Railroad Co.* 24 N. J. Eq. 568, provision was made in a lease that it might be terminated by notice; and provision was made for determining, by arbitration, the damages to which the lessees might become entitled by the determination of the lease. The notice was given, and two arbitrators chosen, who, after hearing evidence and arguments, were unable to agree, and thereupon chose an umpire to

act as third arbitrator. The three then met without notice to the parties, or giving them any opportunity to be heard. This action was held by the court to be misconduct, in the sense of the law, and fatal to the validity of the award.

In *Bushey* v. *Culler*, 26 Md. 534, it appeared there had been a suit pending between the parties which was compromised by a contract, which provided Culler, who had a dam which caused the water to flow back upon Bushey's mill and land, should lower his dam to such an extent as should be judged necessary by Samuel Hargate and George Thomas, they to select a third person, in case of disagreement, who should determine how much the said dam should be lowered, and whose determination should be final and conclusive; and it was further provided, that at any time, within one year from such determination, Bushey should think the dam had not been sufficiently lowered, he might again apply to the arbitrators, who should examine the matter and make another determination. Under this contract the arbitrators made a decision requiring the dam to be lowered six inches, which decision was made without giving notice to either party, and without either party being present. The court held the decision was not valid, and, following the case of *Bullit* v. *Musgrave*, 3 Gill, 32, said: "Where, from the nature of a submission, the judgment of arbitrators may be influenced or enlightened by the adductions of evidence, the parties are entitled to notice of the time and place of their proceeding to investigate the matters submitted to them."

In *Dickenson* v. *Railroad Co.* 7 W. Va. 390, a contract for the sale of land in Nicholas county, Virginia, provided that the vendor should convey it to the vendee "at so much per acre, as may be determined by Messrs. George Brown, Samuel J. Grose and Joseph Copenhaver, being disinterested and responsible land owners in the said county, the price per acre to be certified by them on the back of this agreement." The persons named in the contract made their valuation without notice to, and without the presence of, the vendee.

The court held the valuation not binding, and the learned judge who wrote the opinion said: "The certificate of valuation can not be considered as more solemn, more conclusive or binding upon the parties than an ordinary award. It is but an award, and the referees can not, upon principle, be considered otherwise than as arbitrators." After citing and quoting from a large number of authorities, the opinion continues: "From the weight of authority upon the subject, and from such reflection as I have been able to exercise, my mind has been brought to the conclusion that sound principles, justice and a due regard for the proper administration thereof among men by arbitration, require, ordinarily, though not universally, in equity, that an award made by arbitrators in the absence of the parties to the submission  *  *  *  * may be set aside in equity."

In *Billings* v. *Billings*, 110 Mass. 225, a question arose between two parties as to the construction of a will, and they agreed to refer the point for decision to Henry Chapin, Esq. The referee made his decision without notice and without giving the parties an opportunity to be heard, and the court held his decision was void.

In *Brown* v. *Leyddy*, 11 Hun. (N. Y.) 451, a lease provided that in case of the renewal of a lease, the rent, if not agreed upon by the parties, was to be ascertained as follows: Each party "shall choose a disinterested person to ascertain the same, which persons so chosen shall themselves, respectively, be owners in fee simple of one or more lots of land in the neighborhood of the one hereby demised, and shall, in making their award or determination in the said premises, under oath, appraise and value the said lot or lots of land hereby demised, at its or their full and fair worth or price at private sale," etc., and it was also provided that in case the two could not agree, an umpire was to be chosen by them, whose decision, under oath, should fix and determine the value. The two arbitrators chosen failed to agree, and chose an umpire, who made his award without having given the parties

notice of the time and place of hearing, and without taking any proofs. Upon this point the court say : " The appraisers were to ascertain the value, but in what manner is not stated, whether by the exercise of their own knowledge and judgment or by a hearing, at which the parties could produce witnesses. The word " ascertain," however, has its meaning, and therefore its force : " To make sure or certain ; to fix, to establish, to determine; to settle," are definitions of that word according to Worcester; and this would seem to demand the observance of the usual mode of investigation in order to determine—to settle the value.

"The right of the parties to a hearing   *   *   *   is one of the established privileges, although it may be waived by them. The courts would not declare that such right did not exist, unless the terms of the submission so provided or a waiver was clearly demonstrated."

There are other cases carrying this doctrine farther, holding that even where, by the agreement of the parties, the amount or value of work done under a contract is to be determined by an engineer or other expert, a determination made by him without notice to the parties will not be binding. Among these are the following : *McMahon* v. *New York and Erie Railroad Co.* 20. N. Y. 463; *Collins* v. *Vanderbilt*, 8 Bosw. (N. Y.) 313. On this latter question the authorities are not in harmony, and this court has taken a different view, and in which I fully concur. But my attention has not been called to any case where matter requiring the exercise of judgment and discretion (on the part of the persons by whose judgment the parties have agreed to be bound), and such persons are not selected as experts, in which the decision of such persons has been held binding upon a a party who has not had an opportunity to be heard.

On that question I find no want of harmony in the authorities. Cases are found in which a distinction in some respects is recognized between arbitrations and appraisals; but not in respect of the right of a party to be heard if he is to be bound

by the award or appraisal. None of these cases involve the question of the right to notice.

It has been held, where the revenue laws require one kind of stamp upon an appraisal and another kind of stamp upon an award, that an appraisal by parties to fix the value of certain property was not an award, within the meaning of the revenue laws. *Leeds* v. *Burrows,* 12 East, 1. And where a statute authorized the enforcement, by attachment, of an award by arbitrators, it was held the appraisal of the value of land, which one party had agreed to buy at a price to be fixed by chosen appraisers, was not such an award as could be enforced by attachment. *Lee* v. *Hemmingway,* 3 Nev. and M. 860. A like distinction is taken in *Collins* v. *Collins,* 28 L. J. Ch. 184, and in *Garred* v. *Macey,* 10 Mo. 160, and in *Curry* v. *Lackey,* 35 id. 389, wherein it is held that in many cases an appraisement is not in all respects an arbitration; and that in such respects certain of the rules as to arbitrations do not apply to appraisements. But in none of them is it held that they differ in respect to the necessity of notice; and it is not perceived that there is any reason found in these cases in support of the idea that a party has the right to an opportunity to be heard in an arbitration, and yet in an appraisal he has no such right, though he is to be bound thereby as matter *res judicata,* and it may be to the extent of his fortune. The position I regard as unreasonable, and liable to lead to great injustice, which can not be undone by the review of the courts.

Again, were it conceded that the mere want of notice to the parties in such case be not sufficient, *per se,* to invalidate such an award, it seems to me the misconduct of the appraisers, which appellant offered by his pleas and otherwise to prove, if true, was sufficient to render the appraisal inoperative upon the ground of fraud.

In one of the pleas it is alleged that the appraisers did corruptly and fraudulently refuse to allow the parties to be heard before them, but secretly did proceed to decide said

case without allowing the parties to be heard. On the trial appellant offered to prove that he demanded a hearing before them, which they refused.

This is not a case of mere omission to give notice of the time and place of hearing or consideration of the matter submitted; it is the case of a wilful refusal to hear when requested, and (as is charged in the plea) this was done corruptly and fraudulently.

In my judgment such conduct is evidence of fraud. Even in the case of an appraisement to be made by an expert chosen for such purpose, should he refuse so hear suggestions touching the matter to be determined by him, offered to be made by one of the parties (with the privilege to his adversary to be present), such fact would be competent to be proven, as a circumstance tending to show that the award was in fact fraudulent, and this, too, in an action at law brought upon the award.

I do not understand the court, in this case, as holding such proof would not be competent and cogent in a proceeding in chancery, instituted to set aside the award, but only that it is incompetent in an action at law. I think otherwise. An award, if fraudulently made, is void, and if so, no action can be supported by it.