CHARLES STOSE

*v.*

JACOB HEISSLER *et al.*

*Filed at Ottawa March 22, 1887.*

1. LEASE—*fixing rental value by referees—unanimity required—of the rights of the parties when referees fail to agree.* Parties chosen to fix the rent which a lessee shall thereafter pay for the use of property, there being at the time no rent due, are not, strictly speaking, arbitrators; but unless otherwise provided, they must all agree as to the sum to be paid.

2. A lease of premises provided, that the rent, from and after a certain day, should be agreed upon by three disinterested persons, to be chosen, one by the lessor, and one by the lessees, and these two to select the third. This being done, only two of the referees were able to agree upon the rent: *Held,* that the parties were entitled to the concurrent judgment of the three, and were not bound by the rent so fixed by a mere majority of the referees, and that had they agreed as to the rent, their decision would have been conclusive on the parties, except for fraud.

3. Where the parties to a lease fix the rent to be paid only up to a certain date, four years short of the term, and provide therein that the rent for the remainder of the term shall be agreed upon by three disinterested persons, to be chosen as therein provided, and it happens that such referees can not agree as to the rent to be paid, this will not terminate the lease and exonerate the lessees from paying a fair and reasonable rent thereafter; and the lessor may recover the reasonable rental value of the premises, on showing his inability to have the same fixed as contemplated in the lease; and in such case, it will be presumed that the rent for the balance of the term was intended to be made payable at the same times and in the same manner as provided in the lease for the first part of the term, in the absence of anything indicating a contrary intention.

28—120 ILL.

4. And where there is no provision in the lease for the selection of other referees in case those who have been selected shall fail to agree, no further duty in that regard will devolve upon either party, but at once, upon the disagreement of the referees selected, the lessor may have his action to recover for a fair and reasonable rental value of the premises.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.

This was an action brought by Charles Stose, in the Superior Court of Cook county, against Jacob Heissler and August Junge, for the recovery of a month's rent, claimed to be due under a lease by the plaintiff to defendants, of certain real estate in the city of Chicago. The lease was for the term of ten years, beginning May 1, 1878, and ending May 1, 1888, in which the defendants covenanted to pay to the plaintiff, as rent, the sum of $110 per month, for and during the time from the first day of May, 1878, to the first day of May, 1879, and the sum of $125 per month for and during the time from the first day of May, 1879, to the first day of May, 1884, "and payable on the first day of each and every month." The lease then provides: "The rent for the remaining four years shall be made and agreed upon by three disinterested parties, owning and renting property in Chicago,—each party of the first and second parts to select one man, and the said two selected to agree upon a third party. The parties to this lease agree hereby to abide the decision of the parties selected." The rent was all paid up to the first day of May, 1884. This action was brought to recover the rent for the month of May, 1884, which is claimed to have become due on the first day of that month. This is denied by the defendants, who claim that the rent from May 1, 1884, to May 1, 1888, does not become due until the end of the term.

Prior to May 1, 1884, the plaintiff selected James Campbell, and the defendants selected Charles Kozminski, and they selected James C. Sinclair, under the foregoing provision in

the lease, to determine what rent should be paid for the remainder of the term. These persons, so selected, met, but failed to agree as to what would be a fair and reasonable rent; but on April 30, 1884, the said James Campbell and James C. Sinclair made and delivered to the parties a writing, signed by them alone, which, after various recitals, concludes as follows: "That the said James Campbell, Charles Kozminski and James C. Sinclair, being selected as aforesaid, did, on the 25th day of April, 1884, meet together, and did then and there determine and agree upon the sum of two hundred and fifteen dollars ($215) per month, as being the proper and reasonable rent to be paid by said second parties from May 1, 1884, to May 1, 1888." It appears that Kozminski refused to sign the same, believing the rent therein named to be too much.

The declaration contained five counts, the first being based upon the finding of said Campbell and Sinclair, treating it as a valid award, and binding on the parties. The second count sets out the leasing, and the terms of the lease, according to their legal effect, and the selection of the property holders, as in the first count, and charges that Kozminski, selected by the defendants, neglected and refused, and still neglects and refuses, to agree with Campbell and Sinclair, and fix upon a monthly rental, of which the defendants had notice, by means whereof said defendants became liable to the plaintiff for so much money as the premises were reasonably worth, on the first day of each and every month, from the first day of May, 1884, for and during and until May 1, 1888, as rent for the use and occupation of said premises, and that the same are reasonably worth $250 per month, and concluding in the usual form. The third count makes the lease itself a part of the same, and then shows the selection of the three persons, their meeting together, and the refusal of Kozminski to agree with the other two, substantially as in the second count, and claims $250 a month as a reasonable rent for the premises.

The fourth and fifth counts were for use and occupation, generally. A general demurrer was filed to each count, which the court sustained to the first, second and third counts, but overruled as to the fourth and fifth counts. Thereupon the plaintiff entered a *nolle prosequi* as to the fourth and fifth counts, and the court rendered judgment for the defendants on the demurrer. The plaintiff appealed to the Appellate Court for the First District, where the judgment of the Superior Court was affirmed, and he brings the case here by his further appeal.

Mr. WILLIAM C. WILSON, and Mr. DAVID L. ZOOK, for the appellant.

Messrs. BARNUM, RUBENS & AMES, for the appellees.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The question presented by this record is, whether the court below erred in sustaining the demurrer to the first, second and third counts of the plaintiff's declaration. By the first count the plaintiff sought to recover $215, a month's rent, according to the terms of the written lease, and relying upon the finding of two of the three referees chosen under the provisions of the lease, as an award final and conclusive as to the rent to be paid under the lease. The lease does not show, upon its face, that he is entitled to receive that sum per month for the use of the demised property after May 1, 1884. In the lease, the parties did not fix the rent from and after that date, but provided a mode by which it was to be determined, and, when ascertained in that mode, was to be as binding as if fixed by themselves and inserted in the lease. The monthly rental after May 1, 1884, was to be fixed by three disinterested persons, owning and renting property in Chicago, each of the parties to the lease to select one, and those thus chosen to select the third. The parties had the

right to make such an agreement, and if the persons so selected had agreed upon the rent to be paid, their decision, in the absence of fraud, would have been conclusive upon the parties. The language of the lease on this point is: "The rent for the remaining four years, from May 1, 1884, to May 1, 1888, to be made and agreed upon by three disinterested parties," to be chosen, etc. The plaintiff contends that the provision for the selection of three persons to fix the rent, indicates an intention that a majority might fix the rent, otherwise an odd number would not have been agreed upon. In this respect, the submission does not differ from an ordinary submission to arbitrators, and the power of the referees to make a binding award should be construed in the same way. The matter of fixing the rent was confided to the judgment, experience and discretion of the persons nominated by the parties and the one to be selected by such nominees. The confidence of the parties was in the united judgment of the three, and they agreed to be bound by nothing less than their concurrent judgment. If the conclusion of Campbell and Sinclair is to be taken, it can not be said that the rent has been agreed upon "by three disinterested persons."

We do not think the reference in this case was an arbitration, in the strict sense, for the reason that when the lease was made there was no difference or dispute between the parties to be settled, nor was there any at the time the referees were selected, and, as stated by this court in a similar case, (*Norton* v. *Gale*, 95 Ill. 533,) "the object was to preclude or prevent the arising of differences,—not to settle differences which had arisen." In that case, the rent, after five years, was fixed at six per cent of the appraised value of the demised premises, and before the end of the five years each party was to select an appraiser, who were to select a third in case they could not agree, and their award was to be final. The two appraisers did agree, but failed to give the parties notice of the time and place of their meeting, which

failure to give the parties an opportunity to be heard would have been fatal, had the proceeding been an arbitration of matters in dispute. This court held that there was no arbitration, referring to *Leeds* v. *Burroughs*, 12 East, 1; *Lee* v. *Hemingway*, 3 Nev. & M. 860; *Collins* v. *Collins*, 26 Beav. Ch. 306; *Garred* v. *Macey*, 10 Mo. 161; *Currey* v. *Lackey*, 35 id. 389; opinion of Senator Seward in *Garr* v. *Gomez*, 9 Wend. 649; *Mason* v. *Bridge*, 14 Me. 468; *Oakes* v. *Moore*, 24 id. 214; *Rochester* v. *Whitehouse*, 15 N. H. 468; Russell on Arbitration, (3d ed.) 43; Morse on Arbitration and Award, 40.

The persons here selected were not to make an award for the payment of money by one party to the other. No rent was then claimed to be due, and had they agreed upon the rent to be paid under the lease after May 1, 1884, no action would lie on the award itself. The action would have to be brought on the lease, and the amount fixed upon by the persons chosen, as rent to be paid under the lease, would, in the absence of fraud, afford conclusive evidence of the extent of the lessees' liability thereunder. It is also true that these referees had no power, under their appointment, to give a binding construction of the lease, as, whether the rent for the last four years was payable monthly, monthly in advance, annually, or at the end of the term. (*McAvoy* v. *Long*, 13 Ill. 147.) The extent of their authority, under the provision in the lease, was simply to agree upon what would be a fair and reasonable rent per month for the unexpired term.

But whether the lease provided for a submission to arbitrators, or whether their finding is technically an award or not, is immaterial, as it makes no difference whether its binding effect grows out of their contract that the rent shall be fixed by the united judgment of the three, or from treating the finding as in the nature of a judgment. In either event, it is equally binding and conclusive.

This court has frequently held, that when parties have provided in their contract, in advance, that the quantity of

work done, etc., shall be determined by an engineer or architect, his estimate is conclusive upon them, except for fraud or mistake. *Canal Trustees* v. *Lynch,* 5 Gilm. 526; *McAvoy* v. *Long,* 13 Ill. 147; *Mills* v. *Weeks,* 21 id. 561; *McAuley* v. *Carter,* 22 id. 53; *Parmelee* v. *Hambleton,* 24 id. 608; *Wallace* v. *Holmes,* 36 id. 156; *Korf* v. *Lull,* 70 id. 420; *Snell* v. *Brown,* 71 id. 133; *Coey* v. *Lehman,* 79 id. 173; *Taylor* v. *Renn,* 79 id. 181; *Downey* v. *O'Donnell,* 86 id. 49; *Finney* v. *Condon,* 86 id. 78; *Downey* v. *O'Donnell,* 92 id. 559; *Vermont Street M. E. Church* v. *Brose,* 104 id. 206.

At common law, all the executors were required to join in the execution of a power of sale, when it was not coupled with an estate, and it would not survive in case of the death of one. (*Wardwell* v. *McDowell,* 31 Ill. 364; *Clinefelter* v. *Ayers,* 16 id. 329.) In the first of these cases this court said: "At the common law, it is not doubted that a naked power, such as this has been decided to be, not coupled with any interest in the thing or estate, could only be exercised by the joint action of the donees of the power. The power does not survive in case of the death of one of the donees. (Sugden on Powers, 129.) So, in the execution of a will, where one named with others, as executor, refused to accept and qualify, the others could not execute the will." In *Sinclair* v. *Jackson,* 8 Cow. 553, the court say: "It is a settled rule, that when a trust or authority is delegated for mere private purposes, the concurrence of all who are intrusted with the power is necessary to its execution. *Green* v. *Miller,* 6 Johns. 39; *Franklin* v. *Osgood,* 14 id. 560; Sugden on Powers, 162, 263." So, under a submission of matters in dispute to arbitrators, their award must be unanimous, unless otherwise agreed. *Towne* v. *Jaquith,* 6 Mass. 46; *Maynard* v. *Frederick,* 7 Cush. 252; *Bannister* v. *Read,* 1 Gilm. 92.

It follows, that the finding of the rent by only two of the persons selected, is not binding on the defendants. They never agreed to abide by such a finding. As the first count

sought to recover the rent as fixed by only two of the referees, it was clearly bad, and the demurrer was therefore properly sustained thereto.

The demurrer to the second and third counts presents an entirely different question. These counts set forth the terms of the lease and the selection of the three persons, in accordance with the provision therein, and their inability or failure to agree as to the amount of the rent to be paid, and sought to recover a reasonable rental therefor.

It is evident that the parties contemplated the payment of a reasonable rent during the remainder of the term, and that the amount alone should be left to future adjustment. The parties might have left the amount of the future rent to be agreed upon by themselves. In that case, if they, after an honest attempt to do so, had failed to come to an agreement, the leasing would not have terminated, but the parties would have been left to show, by proper evidence, in the appropriate proceeding, what was a reasonable rental for the demised premises. What the parties could do themselves, they might do through their duly authorized agents. The persons selected to determine the reasonable rental, may be regarded as their duly authorized special agents, deriving their powers from the instrument under which they were appointed. If they had all agreed, their award would have furnished the sole evidence of what was a fair and reasonable rent for the unexpired term. Failing after a *bona fide* attempt to make such adjustment, it is to be treated the same as a failure of the parties to agree, and the same results would follow. They may show, by other evidence, what rent should be paid for the residue of the term. The very object of submitting the matter to the judgment of three disinterested persons, was to dispense with the necessity of a resort to other evidence.

In *Phippen* v. *Stickney*, 3 Metc. 384, Stickney agreed, in case he became the purchaser of a tract of land, to convey a portion of it to Phippen on such terms as they might after-

wards agree upon, or upon such terms as the witnesses to the written agreement should decide to be just and reasonable. The contract was duly executed by the parties, and attested by three witnesses. The parties failing to agree, the three witnesses were brought together, and the parties had notice. Two of them agreed upon and signed a finding, that Phippen should pay to Stickney $180 for the land he had agreed to convey, but the third, who was present, did not agree, and refused to sign the same. The defendant having refused to perform the award, and convey, suit was brought against him, on his agreement. The court there said: "The only remaining objection is, that the plaintiff is not entitled to recover, because there has been no valid award made by the persons agreed upon by the parties, fixing the sum to be paid by the plaintiff, to entitle him to a conveyance from the defendant. The objection is, that of the three arbitrators selected by the parties, two only concurred in the award. This would constitute a valid objection to an action on an award on a submission, at common law, there being no stipulation that a majority should decide. The question arises here, however, under different circumstances, the plaintiff founding his cause of action on the promise of the defendant to convey to him the land. In a case like the present, it appears that the plaintiff has done all in his power to procure an award fixing the amount to be paid by him, in pursuance of the terms of the contract. We do not think that the act of any one of the persons thus selected as arbitrators, in refusing to concur with his associates in fixing the sum to be paid, should operate to divest the rights of the plaintiff arising under this contract. If the sum to be paid by the plaintiff, before he was entitled to the conveyance, could not be adjusted in the manner contemplated by the parties, and this state of things occurred without the fault of the plaintiff, the effect must be that he must pay for the land such a sum as was reasonable, and such sum as the arbitrators ought to have awarded."

In *Hood* v. *Hartshorn*, 100 Mass. 120, a lease for five years contained a clause, that at the expiration of the term, the building erected by the lessee should be appraised by three disinterested men, one to be chosen by the lessor and one by the lessee, and the third by the two thus chosen, and that the lessor should purchase the building at the price set by such appraisers. The appraisers so selected neglected and refused to set a price for the buildings. That court says: "This clause is to be construed with reference to its subject matter. By its terms, the appraisement was not to be made until the expiration of the lease. This would give no time for the removal of the buildings in case the appraisers should fail to agree, and by operation of law they would become the property of the lessor, without any conveyance or transfer. It would be unreasonable to construe the agreement so as to render the obligation of the lessor to pay for them, entirely dependent upon the making of an appraisement. The appraisement is to be regarded as a mere method of ascertaining the price to be paid for them. Yet the stipulation is not void. It gives the lessor certain rights, which are preliminary to the right of the lessee to maintain an action for the price. It binds the lessee to do all that was reasonably in his power to procure the stipulated appraisement." The court say that case is unlike that of *Phippen* v. *Stickney*, in this, that there, the referees were named, and when they failed to make an appraisement, the stipulated method of ascertaining the value wholly failed, there being no obligation resting on either party to appoint other appraisers, and hold, that when those selected failed to agree, others should be selected. But the court also hold, that it was a question of fact for the jury to decide, whether the lessee had reasonably done all he could do on his part to fulfill the contract and procure the appraisement.

There is no provision in the lease before us for the selection of other referees in case those first selected failed to agree, and we can not say, as a matter of law, that such an act is

a condition precedent to the plaintiff's right to recover rent. The plaintiff has done all that the written contract required him to do, unless we, by construction, annex terms and conditions thereto other than the parties saw fit to incorporate. If he is required to select a second time, on a failure of those first chosen to agree, how many times must appraisers be selected? The courts can not make contracts for the parties, but can only construe them as made. If the plaintiff should select another appraiser, there is nothing to prevent the defendants from selecting the same person they did before. If they did so, it could not be held to be a breach of the contract. It might have been more satisfactory if the contract had provided that the determination of a majority should be binding; but the parties did not so contract, and while we can not require the defendants to accept the finding of only two of the referees, neither can we require the plaintiff to seek the appointment of other referees before he can maintain his action.

It would be an easy matter for a party owing money, when the amount to be paid depended upon the unanimous finding of referees or appraisers, to indefinitely postpone a right of action against him, if we should make such finding a condition precedent to a recovery. He might select a referee unduly prejudiced against the other party, and yet it be impossible to show bad faith or collusion with his appointee. The facilities afforded an unwilling party to defeat an adjustment of this kind, are such that we are not disposed to require a party entitled to recover pay for the use of his property, to make any further effort to procure an appraisal or award than the parties have themselves required. If the plaintiff had refused to select a referee, and had thus prevented the fixing of the rent for the unexpired term, this would not, of itself, have terminated the lease, but it would have authorized the defendants to rescind the contract. They would not be bound to hold the premises at an uncertain rental. But if they should not choose to rescind the contract, and hold the prem-

ises to the end of the term, can they hold free of any obligation to pay rent for the four years? We think not. If, then, they continued to occupy the premises after a failure to fix the rent in the mode agreed upon, without the fault of either party, they should be required to pay a reasonable rent therefor.

In *Lowe* v. *Brown*, 22 Ohio St. 463, which was in equity, it was stipulated in an indenture by which a building lot was leased for ninety-nine years, renewable forever, that at the expiration of each successive period of twenty years the ground should be re-valued by three disinterested men,—one to be selected by the lessor, one by the lessee, and the third by the two thus chosen,—who should appraise the same at its true value, and report the amount in writing, and that eight per cent thereon should be the annual rent for the succeeding twenty years. The appraisers thus chosen could not agree,—only two of them made an appraisal. The court held: First, in order to a valid execution of the power, the appraisers must all unite, and that a majority could not make a valid report; second, if they could not agree, and two of them, only, made a report of their appraisement, and one party to the lease refused to select new appraisers in accordance with its provisions, the other party might bring his action to set aside such invalid report, and for the valuation of the leasehold ground,—that in such action the court might refer the case to the master to take testimony, and report therewith the true value of the ground. The court further say: "The power of the court, after the appraisement was declared to be invalid, to order a re-appraisement in the mode provided in the lease, may well be questioned. For it is said to be a well settled principle of equity jurisprudence, that a court of equity will not enforce the specific performance of an agreement to refer any matter in controversy between adverse parties, to arbitrators. (*Conner* v. *Drake*, 1 Ohio St. 166.) It is quite apparent from the record, that an appraisement in

the mode prescribed in the lease could not have been effected without the exercise of such a power in both respects."

This court has held, that when the parties to a contract make an architect an umpire to settle all disputes, and agree that his decision shall be final, payment to be made on condition that the architect shall certify to the amount due, they will be bound by the agreement, and that unless the architect acts in bad faith, refuses to act, or is prevented from acting from unforeseen or uncontrollable cause, no action can be maintained for extra work, without his certificate. But when the architect refused to act, and wrote on the back of the account presented by plaintiff to him, "I * * * most respectfully decline to further try to adjust the differences between the parties in interest," it was also held, that the plaintiff "had a right to sue, without making further effort to get the architect to make a settlement, and give a certificate of the amount due." It would seem, therefore, that when the plaintiff in this case had done all that he was required to do, under the contract, to fix the rental value of the premises, and failed, without fault on his part, his right to sue for and recover a reasonable rent as it should fall due is sustained, both upon principle and by authority.

The point is made by the defendants, that the rent for the four years after May 1, 1884, does not fall due until the end of the term. This depends upon the proper construction of the lease, taking all its parts and provisions into consideration. It will be seen, that for the first year of the term the rent was payable monthly in advance, and for the next five years at an increased rate, likewise payable monthly in advance. The rent for the last four years of the term was to be fixed and agreed upon by three disinterested parties, to be selected as provided in the lease. If the rent for the last four years was not due until the expiration of the term, there was no reason for selecting appraisers before that time, as the fair rental could, at the end of the term, be better known than

four years before. The parties, by selecting the appraisers before May 1, 1884, have given a construction to the terms of the lease at variance with that now contended for by the defendants. But, aside from this, it is evident that both parties contemplated payment of the rent monthly. They understood it to be payable in advance, and the object of selecting the appraisers was to furnish evidence of the amount to be paid each month of the unexpired term, in advance. It would be strange that plaintiff should require the rent paid with such particularity for the first six years, and should contract for the use of his property for the last four years without any security. Taking the lease as a whole, the conduct of the parties, and the nature of the property, into consideration, we have no hesitation in holding that the rent for the entire term was intended to be payable monthly in advance.

We think the court below erred in sustaining the demurrer to the second and third counts in the declaration. As said in *Hood* v. *Hartshorn, supra:* "The stipulation for an appraisement of the rental value was not void, but gave the lessees certain rights preliminary to the plaintiff's right of recovery." It therefore became necessary for him to show that he had taken all the steps required of him by the terms of the lease, to have the rent fixed by appraisers, and the failure to have it thus fixed, in order to entitle him to recover what was a reasonable rent per month of the premises. It was necessary for him to show a valid reason for not procuring the stipulated appraisal, before he could be allowed to introduce other evidence.

The judgment of the Appellate Court and that of the Superior Court are reversed, and the cause remanded to the Superior Court of Cook county for further proceedings.

*Judgment reversed.*