125    383
s84ᴺᵂ  465
132      6
125    383
135    207
125    383
143    159

NOBLE v. GRANDIN.

EQUITY JURISDICTION — CANCELLATION OF DEED — LAND IN AN-
OTHER STATE—AGREEMENT TO ARBITRATE—FRAUD.

   *Complainant, a resident of Michigan, sold to defendants, non-
   residents of this State, 13,000 acres of land in the State of
   Missouri.  Twenty-five thousand dollars was paid upon the
   purchase price.  An agreement was made that the purchase
   price should be determined by the amount of merchantable
   pine timber standing on the land, to be estimated by three
   appraisers.  The estimate made showed timber of the value
   of about $12,000.  Defendants brought a suit at law in this
   State against the complainant to recover the difference be-
   tween the $25,000 and the value of the timber so estimated.
   Complainant filed a bill in chancery charging fraud on the
   part of the defendants in the sale, offered to pay back the
   $25,000, and prayed for an injunction to restrain the suit at
   law.  Held, (1) that the chancery court had jurisdiction to
   set aside the deed and decree a reconveyance of the land;
   (2) that the agreement by which the amount of the purchase
   price should be determined was not an arbitration; (3) that
   complainant is not limited to his remedy at law, but may file
   a bill in chancery to set aside the deed on account of fraud.

   Appeal from Wayne; Waite, J.  Submitted October
3, 1900.  Decided December 19, 1900.

   Bill by Bostwick R. Noble against Elijah B. Grandin
and Livingston L. Hunter to cancel a certain deed and to
restrain an action at law.  From a decree dismissing the
bill, complainant appeals.  Reversed.

   *Bacon & Yerkes* (*John D. Conely*, of counsel), for
complainant.

   *Geer & Williams* and *J. H. Cole*, for defendants.

   GRANT, J.  This bill is filed to cancel a certain deed
and to restrain an action at law.  Defendants pleaded to

   * Head-note by GRANT, J.

a part of the bill and answered to a part. The court below sustained the plea and dismissed the bill.

The bill states substantially that on the 2d day of December, 1895, complainant executed a warranty deed to the defendants for about 13,000 acres of land situated in the State of Missouri, and was paid by the defendants at the time of the delivery of such deed the sum of $25,000 upon the purchase price of such lands; the purchase price of said lands to be arrived at on the basis of $3.50 for each 5,384 8-13 feet of merchantable pine timber standing on said land, which amount was to be ascertained according to a contract bearing even date with said deed. The contract contains the following provisions:

"That whereas, the party of the first part has this day sold to the parties of the second part a tract or tracts of timber land situated in Ripley county, Missouri, consisting in the aggregate of 13,760 acres, and delivered a warranty deed therefor, at a stipulated price of three dollars and fifty cents ($3.50) per acre, subject to the following modification, viz.: This sale is made on the basis that 13,000 acres of said land has now standing on it amounting to 70,000,000 feet of merchantable pine timber (that is, that said 13,000 acres shall average 5,384 8-13 feet of merchantable pine timber per acre); and, in order to ascertain the amount of merchantable pine timber now standing on said land, it is agreed that the party of the first part select one timber estimator, and the second parties may select one estimator, and the two estimators so selected shall select a third estimator, experienced in estimating Southern timber, and that the three thus selected shall at once proceed to estimate the timber on said land, and, in case of disagreement as to the amount of estimate of any piece of said land, the agreement of two of them shall be accepted as the estimate of the amount of timber on said piece or pieces of land. When the estimate is made, should there be less than 70,000,000 of feet on the 13,000, then there should be a deduction from the purchase price ($3.50 per acre) in the same ratio that the true estimate is less than 70,000,000; and, should the estimate show more than 70,000,000 of feet on said 13,000 acres, then the said second parties are to pay the excess over 70,000,-000 feet at the rate of $3.50 for each 5,384 8-13 feet of

excess.    It is further agreed that for all of said land conveyed in excess of 13,000 it is to be paid for at the same ratio."

In pursuance of this agreement complainant appointed as his estimator one Irwin Eveleth, and the defendants appointed W. H. McGregor as their estimator, and these two appointed as a third estimator one George A. Withers. In January, 1896, McGregor and Eveleth went on the land, and, in the absence of the third estimator, Withers (who took no part in making such estimate), proceeded to make an estimate of the timber on the land.    While such estimate was being made, complainant went to Missouri, and sent Eveleth, his estimator, back to Michigan; but afterwards, without the knowledge or consent of the complainant, and at the instigation of the defendants, Eveleth returned to Missouri, and with McGregor completed the estimate of the timber on the land, a copy of which, purporting to be signed by Eveleth and McGregor, fixing the amount of merchantable pine timber on said land at 20,892,500 feet, was delivered to complainant, who immediately repudiated the same and refused to be bound thereby.

On the 29th day of October, 1896, defendants commenced a suit against complainant in the circuit court for the county of Wayne to recover back a portion of the sum of $25,000 paid on the purchase price of the lands by defendants to complainant at the time of the delivery of the deed, basing their right to recover such amount on the estimate as made by McGregor and Eveleth.    Issue was joined in that suit.    On the 6th day of March, 1897, complainant commenced a suit in the circuit court for the county of Wayne, in chancery, against the defendants, to restrain them from prosecuting said action at law, and to rescind the contract and deed on the ground of fraud, in which suit the defendants appeared and filed a plea to a part of the bill, and an answer to the remainder, which said suit is now pending upon said bill of complaint, plea,

and answer. After the commencement of said suit by the complainant against the defendants, the defendants, on the 1st day of October, 1897, discontinued the first suit brought by them against complainant to recover moneys paid on said purchase price.

On the 18th day of May, 1897, and after complainant had repudiated such contract, and had commenced his said suit in the circuit court for the county of Wayne to rescind the same, the defendants claimed to have caused another estimate of the timber on said land to be made by said three estimators, and served a copy of said estimate upon the complainant. On the 1st of November, 1897, defendants commenced a second action in *assumpsit* in the circuit court for the county of Wayne against complainant, to recover back a portion of the $25,000 paid on the purchase price of the land at the time of delivering the deed, basing this suit upon the contract and the second estimate, claimed to have been made in 1897. On the 2d day of May, 1898, complainant filed the bill in this cause to restrain the defendants from prosecuting their second suit at law, and to rescind the deed and contract providing for the estimate of the pine timber on said property, on the ground that such contract, and the provision in the deed relating to the purchase price, were obtained from complainant by fraudulent representations. Defendants appeared in said cause, and pleaded to so much of the bill as prays for a rescission of the contract and setting aside the deed, and answered the bill so far as it prayed for an injunction. On the 20th day of February, 1900, the case was brought for a hearing before Judge Waite, of the Wayne circuit, on the bill and plea, and on an application for a preliminary injunction by complainant. The application of complainant for a preliminary injunction was denied, and the plea of the defendants to the bill was allowed, and so much of the bill as was covered by the plea was dismissed, from which decree complainant appeals.

The plea of the defendants alleges that:

"These defendants are nonresidents of the State of Michigan, and that complainant is a resident of the county of St. Clair, in said State of Michigan, and that the lands described in said bill of complaint are situate in the State of Missouri, and that neither of these defendants nor said complainant, at the time of the filing of said bill of complaint, was a resident of said county of Wayne, where said bill was filed, and that said suit in no manner affects or relates to real estate in the county where the same was exhibited as aforesaid."

It is claimed by defendants that neither the complainant nor either of the defendants being a resident in the county of Wayne, and none of the property being situated there, therefore a bill would not lie to compel a reconveyance of the lands to complainant.

We think it is settled that, where the court has jurisdiction of the parties, it may decree a conveyance of real estate by those parties, although the property be situated in another State or country. Especially is this true where the title has been acquired by any species of *mala fides* practiced on the plaintiff. In *Muller* v. *Dows*, 94 U. S. 444, the court, after speaking of the English chancery decisions, said:

"It is here undoubtedly a recognized doctrine that a court of equity sitting in a State, and having jurisdiction of the person, may decree a conveyance by him of land in another State, and may enforce the decree by process against the defendant. True, it cannot send its process into that other State, nor can it deliver possession of land in another jurisdiction; but it can command and enforce a transfer of the title."

In *Gardner* v. *Ogden*, 22 N. Y. 327 (78 Am. Dec. 192), in which a bill in equity was filed to set aside a deed fraudulently obtained from the plaintiff, and to compel the defendant to reconvey to plaintiff certain lands situate in the State of Illinois, it was objected that the court had no jurisdiction in the case. It was said:

"The supreme court of this State, as a court of equity, could not, therefore, take jurisdiction of an action for the

recovery of lands situate in another State, where the proceeding was *in rem;* but, where it has jurisdiction of the proper parties, it may by its judgment or decree compel them to do equity in relation to lands located without its jurisdiction.    The court in such a case acts *in personam.* We regard this as so well settled by authority that it cannot longer be seriously questioned.    A review of the authorities in England and this country will, we think, place this matter beyond all doubt.    *    *    *    These cases must be held to establish the jurisdiction of the supreme court in the present case on an impregnable basis, and that the court, having jurisdiction of the party in whom the legal title to the land in controversy is vested, may, by its process of attachment and injunction, compel him to do justice by the execution of such conveyances and assurances as will affect the title to them in the State of Illinois."

See *Dale* v. *Roosevelt*, 5 Johns. Ch. 174; *Arglasse* v. *Muschamp*, 1 Vern. 75; *Farley* v. *Shippen*, 2 Va. 254; *Cloud* v. *Greasley*, 125 Ill. 313 (17 N. E. 826).

The present case is not like *Richard* v. *Boyd*, 124 Mich. 396 (83 N. W. 106).   There the proceeding was *in rem* and local, and the court could not grant the relief asked without ordering a sale of the land for the satisfaction of the lien.   It was held, however, in *Roberts* v. *Roberts*, 124 Mich. 414 (83 N. W. 132), that a suit to compel the production of a deed could be maintained in another county than where the lands lay, notwithstanding the statute (1 Comp. Laws 1897, § 434) providing that a suit in chancery shall be commenced in the circuit court for the county in which the property in dispute is situated, if the subject-matter be local.   We think the case is no different in this respect because all the parties are nonresidents of this State.   The question is, Did the court have jurisdiction of the parties?   Some question is raised in regard to this.   It appeared that the defendants came into this State, and submitted to the jurisdiction of the circuit court of Wayne county by commencing an action at law against the complainant to recover for overpayments under the contract given with the deed, and as a part of

it.   When the chancery suit was commenced by complainant against them, the subpœna was served, by order of the court, upon their attorneys in the suit at law.   The defendants appeared in the case, pleaded to a part of the bill, and answered as to the rest.   This gave the court jurisdiction of the parties.   We think the court was in error in sustaining the plea.

It is contended by complainant that the court was in error in denying the injunction restraining the defendants from proceeding with the suit at law.   On the other hand, the defendants contend that the court was not in error, in that the complainant has an adequate remedy at law. The question necessarily leads to a discussion of the facts set up in the bill, and the character of the instrument sought to be set aside.   It appears from the allegations in the bill that the complainant was willing to sell to defendants the land in controversy at $3.50 per acre.   The bill alleges that an agreement was entered into between the parties on November 2, 1895, to sell at that price.   The complainant, in pursuance of that agreement, procured abstracts of title to the land and submitted them to the defendants; and afterwards, and on December 2, 1895, the parties met at St. Louis, Mo., for the purpose of closing up the sale.   The fraud complained of relates to what took place at St. Louis, where, it is claimed, the agent made the false representations that the land contained upwards of 70,000,000 feet of pine timber, and that, relying upon such representations, complainant agreed to enter and did enter into the contract accompanying the deed above set forth.   The further claim made by the bill is that the contract was an agreement to submit to arbitration, and the objections made to the award are that the arbitrators had made a prior award; that the submission to arbitration had been revoked by the complainant; that the arbitrators had acted fraudulently, in that they failed to estimate all the timber; that they made mistakes; that they did not correctly locate the different descriptions of land, so as to know what timber was on the land; that

these are matters outside the record, and cannot be shown in an action at law.

There might, and undoubtedly would, be some force in these claims, if the contract can be construed as a submission to arbitration; but we are satisfied it cannot be so construed. Under this agreement the parties named therein were simply to estimate the merchantable pine timber on the land, and determine the amount, and make a report to the parties to the contract as soon as it could be correctly done. This, most certainly, is not a submission to arbitration. The theory of an arbitration is that it is a substitute for a proceeding in court. Such agreements can be revóked by either party, and notice of the time and place of meeting of the arbitrators must be given the parties, so that they may have the opportunity to be heard. There is a broad distinction between a submission to arbitration and the reference of a collateral or incidental matter of appraisement, measurement, or calculation. Morse, Arb. 36, lays down the rule thus:

" It is only matters inherently doubtful that can constitute the material for submission. Matters which are doubtful solely because no pains have been taken to remove the doubt are not proper to be submitted. There must at least be a conceivable possibility of a difference of opinion between the parties. The decision must be arrived at by some use of discretion,—by some exercise of the judicial faculty. Thus the sum of a column of figures, before they have been added, is, in a certain sense of the phrase, in doubt. The number of square feet in a given surface is likewise in doubt till the measurement and calculation has been made. But a doubt of this nature is not of the sort which can be submitted to arbitration. It is more accurately to be described as a want of knowledge than as a doubt. It is an uncertainty of that description that there is no intrinsic obstacle to a solution,—no room for intelligent men to dispute concerning the result obtained from the application of established processes of calculation to known and unquestioned facts. Therefore there is no occasion for calling into play the powers of a judge or arbitrator, since there is nothing to be adjudicated upon. The labor to be performed is purely ministerial in character."

This distinction is pointed out in many cases contained in the books.

In *Palmer* v. *Clark*, 106 Mass. 389, the court said:

"A reference to a third person to fix by his judgment the price, quantity, or quality of material, to make an appraisement of property, and the like, especially when such reference is one of the stipulations of a contract founded on other and good considerations, differs in many respects from an ordinary submission to arbitration. It is not revocable. The decision may be made without notice to or hearing of the parties, unless such notice and hearing be required by express provision or reasonable implication."

Authorities could be multiplied upon this question, holding the same doctrine; but, as said by the court in *Conference of M. E. Church* v. *Seitz*, 74 Cal. 287 (15 Pac. 839):

"It must be admitted that there are cases to the contrary. But in most of them the distinction does not seem to have received attention, and the cases in which the distinction was noticed do not seem to us to be well reasoned. * * * In a case like the present, where the reference to a third person is provided for in a contract made long before any controversy arises, which contract is made upon valuable consideration other than the mutual promise to submit to the decision of the third party,—the decision being merely one link in the chain of the claim,—we think that the proceeding is not an arbitration."

The following cases sustain the proposition that such a submission is not an arbitration: *Collins* v. *Collins*, 26 Beav. 306; *Kelly* v. *Crawford*, 5 Wall. 785; *Willingham* v. *Veal*, 74 Ga. 755; *Norton* v. *Gale*, 95 Ill. 533 (35 Am. Rep. 173); *Stose* v. *Heissler*, 120 Ill. 433 (11 N. E. 161, 60 Am. Rep. 563); *Pearson* v. *Sanderson*, 128 Ill. 88 (21 N. E. 200); *Haley* v. *Bellamy*, 137 Mass. 357; *Leonard* v. *Cox*, 64 Mo. 32; *Green & Coates Streets R. Co.* v. *Moore*, 64 Pa. St. 91; *Flint* v. *Pearce*, 11 R. I. 576.

Under these authorities, we must hold that this agreement, which was made part of the deed, was not an agree-

ment to submit to arbitration, but was and is a collateral part of the contract, and is not revocable by either party. The real question, therefore, which is raised by the bill, is whether the defendants were guilty of fraudulent representations in obtaining the deed and contract from the complainant, and, if so, whether complainant may go into a court of equity to set them aside.

The situation as charged in the bill is this: Complainant valued his land at $3.50 per acre, amounting to about $45,000, and had made a parol agreement to sell it to defendants at that price per acre. Seventy million feet of pine, at the price agreed upon, would amount to about the same. Complainant had not estimated the timber, and was ignorant of the amount. Defendants' agent represented to complainant, in their presence, that he had estimated the timber, and that there was at least 70,000,000 feet; that there might be more; and that complainant could not lose, and might possibly gain, by selling upon the basis of $3.50 for every 5,384 8-13 feet of merchantable pine timber. It turned out—based upon the report of the estimators agreed upon—that there was pine timber of the value only of about $12,000. If this be true, White lied. If White lied, defendants must pay the penalty for the falsehoods and misrepresentations of their agent, however innocent in fact they may have been. Defendants promptly brought suit, even before the estimate which had been agreed upon had been made. Complainant promptly filed a bill of complaint to restrain the suit at law, and offered to repay the $25,000 which defendants had advanced upon the purchase. Defendants then discontinued that suit at law, and procured an estimate to be made by all three estimators, after which they again brought suit. Complainant thereupon filed another bill (the present one) to restrain the prosecution of the suit at law.

If the only question of fact involved was the amount of pine timber upon the land, the remedy at law would be adequate. But complainant asserts that he was induced by the fraudulent representations made on the part of the

defendants' agent as to the amount of timber to enter into the contract; that he made the sale upon that basis, and would not have parted with his title to the land except on the basis that White had examined the land and had made an honest estimate. Complainant was willing to take his chance that White's estimate might be erroneous. But did he agree to sell if White's estimates were intentionally false and fraudulent, and made for the express purpose of getting the land at less than one-third of its real value? He asserts that the land is worth over $45,000. If left to his remedy at law, the position of the complainant is this: He must defend the present suit at law. What relief can complainant obtain in that suit for the fraudulent representations on account of which he sold his land? If it be found that there is only $13,000 worth of timber upon the land, but that the land is actually worth $45,000, can he recover the difference? If he can defeat the present action upon the ground that there is more than $25,000 worth of pine timber, he must still bring another suit to recover the balance of the purchase price. Can he bring suit on his parol contract for $3.50 per acre, on the ground of misrepresentation as to the amount of timber? Two remedies are usually open to one who has been induced to part with the title to his land through fraud: He may sue in an action for the fraud, or file his bill in chancery to rescind the sale upon tender or offer to pay back what he has received. Courts do not usually say to one who has thus parted with his title through fraud, "You can sue your grantee and recover whatever damages you can prove, and run the risk of his solvency to obtain the amount." The usual and appropriate remedy is in equity, to rescind the sale, cancel the deed, and place both parties *in statu quo*. Therefore, in my judgment, the question in this case is, Does the bill of complaint allege a fraud of which courts of equity will take cognizance? I think it does. If the allegations of the bill be true, and the estimators correctly and honestly estimated the timber, complainant has been compelled to part with the title to

property which he valued, and still values, as worth $45,-000, for $12,000 or $13,000. He avers that he executed the deed upon the representations of the defendants' agent, made in their presence. Defendants answered, denying all the allegations of fraud. I think the averments of fraud are sufficient to give the court jurisdiction, and to entitle complainant to a hearing upon proofs.

The decree is reversed, the case remanded for further proceedings, and a temporary injunction granted until final decree. Complainant will recover costs.

The other Justices concurred.