## HAMMOND v. WALL.

No. 3167.   Decided December 28, 1917.   Rehearing Denied February 8, 1918.   (171 Pac. 148.)

1. MORTGAGES — FORECLOSURE — PERSONAL LIABILITY.   Under Comp. Laws 1907, Sections 3498, 3499, 3503, as to sales on foreclosure, the court can impose a personal liability on the mortgagor only after having ordered a sale of the property, and after the sale has been had according to law and a deficiency appears.[1]   (Page 469.)

2. MORTGAGES — FORECLOSURE — PERSONAL LIABILITY.   The remedy pointed out by such statutes cannot be said to be merely cumulative so as to warrant a court of equity in granting any relief known to the courts, since Comp. Laws 1907, Section 2489, provides that the Revised Laws establish the law respecting their subjects; such statutes being mandatory.   (Page 470.)

3. MORTGAGES—JURISDICTION—LANDS IN OTHER STATE—FORECLOSURE. Where lands in Utah and in Idaho were mortgaged, a Utah court, having decreed foreclosure and the sale having been made under an erroneous description, had the power, on proper petition, to reform the deed and mortgage so as to properly describe the lands and to vacate the former sale and satisfaction, but could not foreclose the mortgage on the Idaho lands and order the Utah sheriff to sell the Idaho lands.   (Page 471.)

4. CONTEMPT—DISOBEDIENCE—VOID COURT ORDER—EFFECT.   Where a Utah court made a void order for foreclosure of mortgage on lands in Idaho, and further ordered the mortgagor to make a deed to such lands, his refusal to make such deed did not place him in contempt of court, since he was entitled to wait until there had been a legal sale of the mortgaged premises, and the court order was absolutely void.   (Page 474.)

---

[1] *Boucofski* v. *Jacobsen*, 36 Utah, 165, 104 Pac. 117, 26 L. R. A. (N. S.) 898; *Coburn* v. *Bartholomew*, 50 Utah 566, 167 Pac. 1156.

·5. MORTGAGES—SALE BY MORTGAGOR—PURCHASER'S LIABILITY. Clause
   in deed, reciting that the purchaser bought subject to all liens,
   mortgages and incumbrances, did not constitute upon his part an
   agreement with the mortgagee to pay the mortgage. (Page 475.)

Habeas corpus by L. I. Hammond against I. O. Wall.

PETITIONER DISCHARGED.

*Hammond & Hammond* for plaintiff.

*A. C. Hatch* and *E. A. Walton* for defendant.

FRICK, C. J.

The plaintiff, hereinafter called petitioner, filed his petition
in this court, in which he alleged that he was unlawfully
restrained of his liberty by the above-named defendant, who
is the sheriff of Wasatch County, Utah. The petition was
filed November 13, 1917, in which the cause of detention was
set forth. Thereafter, and before the hearing, petitioner filed
an amendment to the petition in which the cause of the alleged
illegality of the detention was more fully set forth. A writ of
habeas corpus was duly issued as prayed, to which the defend-
ant made return as provided by our statute.

The arrest and detention of the petitioner, which he alleges
are unlawful, are based upon certain proceedings had in the
district court of Wasatch County, Utah, in which the Bank
of Heber City, a corporation, hereinafter called bank, was
plaintiff and J. W. Musser, Rose B., his wife, Barr W. Musser,
Leah M., his wife, hereinafter styled mortgagors, and a num-
ber of others, including the petitioner, were defendants. The
record of the proceedings in the actions out of which this pro-
ceeding arises, as it is presented by both the petitioner and the
defendant, is very voluminous. The controlling facts, very
briefly stated, are as follows: On December 16, 1915, said
bank, in an action which was then pending in the district
court of Wasatch County against said mortgagors, to fore-
close a mortgage, obtained a judgment for the sum of $10,600,

and a decree foreclosing the mortgage which was executed by said mortgagors to said bank on lands a part of which were situated in Duchesne County, Utah, and a part in Franklin County of the state of Idaho. The lands in Duchesne County were subsequently made a part of Wasatch County. The lands in Idaho were described in said mortgage as lots 3 and 4, and the south half of the northwest quarter of section 3, township 15 south, range 38 east of Boise meridian, containing 163.87 acres. The district court of Wasatch County, Utah, entered a decree foreclosing the mortgage on both the Utah and Idaho lands, and ordered the sheriff of the county to sell the same and apply the proceeds of the sale in discharge of such mortgage. The sheriff made return that he had sold the lands lying in Utah and in Idaho to the bank for the sum of $9,000, of which amount he obtained $7,200 from the Idaho lands. He therefore credited on the bank's judgment said sum of $9,000, less the costs, amounting to $42.20, leaving the amount to be credited on said judgment the sum of $8,957.80, which was duly credited thereon. After said judgment of foreclosure and the sale of said mortgaged premises the bank discovered that there was a mistake in the description of said Idaho lands, and that the same were described as being in section 3 when in truth and in fact the same were situated in section 2, township and range aforesaid. The bank also discovered that said Idaho lands were erroneously described in the deed by which the mortgagors obtained the title thereto, and that the description in said deed was the same as in the mortgage aforesaid. After the bank discovered said mistakes it then commenced another action in Wasatch County against all of the defendants in the first action and against some others, in which latter action it set forth all of the foregoing facts, and also set forth that the petitioner, on the 6th day of December, 1915, purchased the Idaho lands from the mortgagors, and that the same were conveyed to him by proper deed of conveyance in which said lands were correctly described as being in section 2, township and range aforesaid, and that the deed to the petitioner contained the following clause, to wit:

"Subject however, to all liens, mortgages, or other incum-

brances of any kind or nature whatever now of record in the office of the county recorder of said Franklin County, Idaho, which are existing liens or incumbrances on said property, reference to which records is hereby made for a full and complete description.''

The bank also alleged, and the court found, that when the petitioner purchased said lands he had actual notice of the bank's mortgage, and that the consideration he paid therefor was merely a sum equal to the value of the equity or redemption. It also appears from the record that the petitioner thereafter conveyed a portion of said lands to one Harrison Hill, subject, however, to the lien of said mortgage. In view of the court's judgment this feature is not material, and will not be referred to hereafter. In brief, all of the transactions respecting said mortgaged lands are fully made to appear in the bank's complaint, and it was there alleged that all of the parties to said action had actual knowledge of the paramount and prior interest of the bank in said lands, and that whatever interest that was claimed by any one in or to said lands was subject to the interest and right of said bank. The bank prayed for, and obtained, a decree whereby the sale of the Idaho lands and the satisfaction of the former decree to the extent of the sum of $7,200 received for said Idaho lands was vacated and set aside; the deed and mortgage aforesaid were reformed so as to correctly describe said Idaho lands; that said mortgage as reformed, to the extent that it covered the Idaho lands, was again ordered foreclosed, and said Idaho lands were ordered sold by the sheriff of Wasatch County, Utah, who was appointed as ''commissioner of this court''; that ''said sale be made as provided by the laws of the State of Utah for the sale of real estate under execution,'' that said sheriff, after the time for redemption has expired, and ''no redemption being made, execute a deed to the purchaser or purchasers of the said mortgaged premises at said sale.'' The court further decreed that the petitioner and the other defendants, especially naming them, after the period of redemption provided by the laws of Utah has expired and after said sheriff has executed a deed as aforesaid, shall also ''make, execute,

and deliver to said purchaser or purchasers a good and suffi-
cient quitclaim deed, quitclaiming and conveying to the pur-
chasers all of the right, interest, claim, and demand of the
said defendants and each of them in and to the said premises
and every part thereof, and in the meantime each and all of
said defendants are enjoined and restrained from transfer-
ring or incumbering said lands or the title thereto.'' There
are many other matters referred to in said decree, but the
foregoing are sufficient to illustrate the real questions involved
in this proceeding.

The sheriff of Wasatch County, as directed, again offered
said Idaho lands for sale in said Wasatch County, and again
sold the same, and after the period of redemption under the
laws of Utah had expired he executed a sheriff's deed for said
lands to the purchaser thereof. Thereafter a demand was
made upon the petitioner to execute and deliver a quitclaim
deed to the purchaser of said Idaho lands, which he refused
to do. He was accordingly adjudged to be in contempt of
court, and was arrested, and is now being restrained of his
liberty for the reasons stated.

The petitioner's counsel contend that he is being unlawfully
restrained of his liberty for the reason that the district court
of Wasatch County was without power or jurisdiction to fore-
close the mortgage on the Idaho lands and to order the sale
thereof, and that it exceeded its jurisdiction in requiring him
to execute and deliver a quitclaim deed to the purchaser of
said lands, etc. Upon the other hand, the defendant insists,
with much vigor, that in view that the district court had juris-
diction of the subject-matter and of the person of the peti-
tioner, it had full power and jurisdiction to require him to
execute the quitclaim deed. In other words, the contention is
that in view that it was adjudged that the petitioner held the
title to the Idaho lands subject to the rights of the bank, and
that it was alleged that the petitioner had no interest in said
lands, but merely held the legal title thereto—that is, that he
merely held the equity of redemption—the court had ample
power and authority to require him to convey that title to any
person who purchased the lands at the sheriff's sale. In this

connection counsel concede that the court's order to the sheriff of Wasatch County to sell the Idaho lands, and the sheriff's acts in selling the same, were without authority of law, but they insist that for the reason that the title was not passed by the sheriff's deed the court had the power to require the petitioner to convey the title which he held without right to the purchaser, and that said power especially existed because the order to convey was part of the decree.

Counsel on both sides, in support of their contentions, have referred to numerous cases, to some of which we shall refer later. In view, however, of the peculiar provisions of our statute relating to the foreclosure of mortgages, the cases cited by counsel can be given but little, if any, effect. Our statute (Comp. Laws 1907, section 3498) provides:

"There can be but one action for the recovery of any debt or the enforcement of any right secured by mortgage upon real estate or personal property, which action must be in accordance with the provisions of this chapter. Judgment shall be given adjudging the amount due, with costs and disbursements, and the sale of the mortgaged property, or some part thereof, to satisfy said amount, and directing the sheriff to proceed and sell the same according to the provisions of law relating to sales on execution. Such judgment may be docketed at any time."

Section 3499 reads as follows:

"If it appears from the return of the officer making the sale that the proceeds are insufficient, and a balance still remains due, execution may be issued for such balance as in other cases; but no such execution shall issue until after the sale of the mortgaged property and the application of the amount realized as aforesaid."

The only other section that is material here is section 3503, which reads:

"Sales of real estate under judgments of foreclosure of mortgages and liens are subject to redemption as in case of sales under execution."

We have had occasion to construe the foregoing sections in

*Boucofski* v. *Jacobsen*, 36 Utah, 165, 104 Pac. 117, 26 L. R. A. (N. S.) 898. In that case, in following the Supreme Court of California, from which state our statute is taken, we, in effect, held that actions to foreclose mortgages under our statute are essentially actions in rem; that until the mortgaged property is sold and the proceeds of sale are applied in discharge of the mortgage, there is no personal liability on the part of the mortgagor, and "that the personal liability of the mortgagor cannot without his consent, be enforced until after the sale and for the deficiency only." We, in a very recent case, *Coburn* v. *Bartholomew*, 50 Utah 566, 167 Pac. 1156, reaffirm the doctrine laid down in *Boucofski* v. *Jacobsen*. In this jurisdiction, therefore, the courts, in mortgage foreclosure cases, can impose a personal liability on the mortgagor only after having ordered a sale of the mortgaged property and after the sale thereof has been had according to law, and then he may be held liable only in case there is a deficiency. The cases cited by the defendant, in which it is held that where a court of equity has jurisdiction of the subject-matter and of the person of the defendant the court may require him to convey lands situated within a foreign jurisdiction when the suit and the "remedy granted directly affect and operate upon the person of the defendant and not upon the subject-matter, although the subject-matter is referred to in the decree," have no application here. Among the cases referred to by counsel are the following: *Butterfield* v. *Nogales Copper Co.*, 9 Ariz. 212, 80 Pac. 345; *Noble* v. *Grandin*, 125 Mich. 383, 84 N. W. 465; *Bevans* v. *Murray*, 251 Ill. 603, 96 N. E. 546; *Gordon* v. *Munn*, 81 Kan. 537, 106 Pac. 286, 25 L. R. A. (N. S.) 917; *Bowler* v. *Bank*, 21 S. D. 449, 113 N. W. 618, 130 Am. St. Rep. 725; and *Title, etc., Co.* v. *Title, etc., Co.*, 171 Cal. 173, 152 Pac. 542-553.

As already pointed out, under our statute in mortgage foreclosures, both the suit and the remedy do not and cannot operate upon the mortgagor personally, although he is a defendant in the action unless and until the remedy against the mortgaged property is exhausted. Nor can it be said that the remedy pointed out by our statute is cum-

ulative merely, and that a court of equity may, nevertheless, grant any relief known to such courts. Comp. Laws, 1907, section 2489, in part provides:

"The Revised Statutes establish the law of this state respecting the subjects to which they relate," etc.

The statute is therefore mandatory, and, having spoken upon the subject of mortgage foreclosures, its mandate must be obeyed by all courts. To the extent that the doctrine of the cases last referred to is contrary to our statute they cannot be given effect in this jurisdiction.

Under a statute like ours the doctrine stated by the author of Rorer on Judicial Sales, section 58, is applicable. The author, in speaking of jurisdiction, says:

"Lands lying in one state cannot be reached or sold under order, license, or decree of a court entered in a different state. The jurisdiction is local. The lex loci rei sitæ governs."

The same doctrine is laid down by the Supreme Court of Michigan in *Richards* v. *Boyd,* 124 Mich. 396, 83 N. W. 106. A mere cursary examination and comparison of the two Michigan cases, the one cited by the defendant, to wit, *Noble* v. *Grandin,* 125 Mich. 383, 84 N. W. 465, and the other cited by the petitioner, namely, *Richards* v. *Boyd,* 124 Mich. 396, 83 N. W. 106, will at once disclose the distinction courts make between an action, the ultimate purpose of which is to foreclose a mortgage and one which merely "operates directly upon the person of the defendant," as was the case in all of the cases cited by the defendant, and to which reference has been made.

Defendant's counsel, however, insist that the case out of which the present proceeding arises was such as to confer jurisdiction upon the district court to require the petitioner to convey the title to the mortgaged lands in Idaho, since he held the same subject to the rights of the mortgagee, and for the reason that the order requiring him to convey operated directly upon the person of the petitioner of which the court had jurisdiction. There can be no doubt of the court's jurisdiction respecting the matters set forth in the complaint, in so far as they related to the reforma-

tion and correction of the deed and mortgage, the vacating of the former sale and the former satisfaction, and in determining the rights and liabilities of the parties to the action, including the petitioner. When the court, however, had granted the bank the relief just outlined and had reformed and established its mortgage the court was powerless, under our statute, to proceed further. It was powerless to foreclose the mortgage on lands lying in Idaho, and to order the sheriff of Wasatch County to sell those lands and to apply 'the proceeds in satisfaction of the mortgage. The law clothed the sheriff with no such power, and the court was powerless to invest him therewith. The district court had jurisdiction to grant the relief respecting the reformation of the deed and mortgage, since to that extent the action was merely in personam and operated only on the persons interested in the transactions and in the mortgaged premises. 34 Cyc. 964. Moreover, to that extent the relief was merely ancillary to the final remedy, which was to foreclose the mortgage and to subject the Idaho lands to the payment thereof. 4 Pomeroy, Eq. Jur. (3d Ed.) section 1375. Had the district court refrained from further action no one would now be permitted to assail its decree. The court, however, did not stop there, but ordered the sheriff of Wasatch County to do something it had no power to order him to do; and after the sheriff had executed a void order the court, in order to cure any defect in the order it was powerless to make, further ordered the petitioner to execute a quitclaim deed to the purchaser of the mortgaged premises. It is for refusing to obey that order, which the court had no power to make, that the petitioner is adjudged to be in contempt. The record therefore presents a case where a court of equity had jurisdiction of the subject-matter and also of the person of the petitioner, but where the court exceeded its jurisdiction in requiring a party to the action to do something the court could not require of him.

If it shall be held that the district court had the power to make the order of sale and to require the petitioner to execute a quitclaim deed to the purchaser because the petitioner had succeeded to the title of the mortgagors of the mortgaged

premises subject to the mortgage after the mortgage was executed, then it follows that the court has the power in any foreclosure suit to compel the holder of the legal title, that is, of the equity of redemption, to convey the same to the purchaser of the mortgaged premises after sale. Indeed, why may not a court, however erroneous such an order may be, order the holder of the legal title to convey the same to the mortgagee before sale? That is in effect what the court did in this case, since the order of sale was stillborn and of no effect. What is true of the order of sale is likewise true of the sale itself. We have a case, therefore, where the court did not have jurisdiction to make the particular order in question, although it had jurisdiction of the subject-matter and of the person of the petitioner. Stating it in another form, the court exceeded its jurisdiction in requiring the petitioner to execute the quitclaim deed. This case, therefore, clearly falls within the doctrine announced in the following cases: *Ex parte Rowland,* 104 U. S. 604, 26 L. Ed. 861; *Ex parte Lange,* 18 Wall. (U. S.) 176, 21 L. Ed. 872; *People* v. *Liscomb,* 60 N. Y. 559, 19 Am. Rep. 211. See, also, Bailey, Habeas Corpus, 262 et seq., where will be found a full discussion of the doctrine just referred to.

The case of *Ex parte Rowland* on principle is not distinguishable from the case at bar. In that case the lower court directed certain officials to do an act which, under the law, they did not have the power to do. The officers refused to act, and the court committed them for contempt. The officers instituted proceedings in habeas corpus in the Supreme Court of the United States, and that court held that the lower court had exceeded its authority in making the order, and hence the same was void. In the course of the opinion Mr. Chief Justice Waite, speaking for the court, at page 612 of 104 U. S. (26 L. Ed. 861), said:

"If the command of the peremptory writ of mandamus was in all respects such as the circuit court had jurisdiction to make, the proceedings for the contempt are not reviewable here. But if the command was in whole or in part beyond the power of the court, the writ, or so much as was in excess of jurisdiction, was void, and the court had no right in law to punish for any contempt of its unauthorized requirements. Such

is the settled rule of decision in this court. *Ex parte Lange,* 18 Wall. 163 [21 L. Ed. 872]; *Ex parte Parks,* 93 U. S. 18 [23 L. Ed. 787]; *Ex parte Siebold,* 100 U. S. 371 [25 L. Ed. 717]; *Ex parte Virginia,* 100 U. S. 339 [25 L. Ed. 676].''

The order of the district court requiring the sheriff of Wasatch county to sell the Idaho lands was utterly void. If the sheriff, therefore, had refused to comply therewith and the court had committed him for contempt and he were here complaining, we, under the authorities above cited, would be required to discharge him. Now, in view of our mortgage foreclosure statute, which we have set forth, there never has been a legal sale of the mortgaged premises, and hence the period of redemption has not expired. Indeed, it has not even commenced. Comp. Laws 1907, section 3263, permits redemption ''within six months after the sale.'' The petitioner, under the statute, had the right to redeem the land as provided in said section. He had the right, however, to wait until the land was legally sold so that he, as the statute prescribes, could ascertain ''the amount of his [the purchaser's] purchase.'' That could be ascertained only after a legal sale of the mortgaged premises.

It must not be assumed that the court's order in this case merely constituted error. The effect of the order is precisely the same as any order or judgment which is in excess of the pleadings and issues in a case. Where the court transcends the pleadings and issues its orders are not voidable, but void. In attempting to foreclose the mortgage on the Idaho lands the court clearly transcended its powers, and all that was done in that regard was void. After the court had reformed the mortgage and had determined the rights of the parties to the action, it had exhausted its powers. It could not enforce its decree against the lands lying in Idaho any more than it could order the sale of property in Idaho under execution to satisfy a judgment obtained in Utah in a law case. The bank may readily enforce its judgment by suing upon it in the Idaho courts, and may there foreclose the mortgage and sell the lands to discharge the mortgage debt.

Some claim is, however, made by the defendant that the

petitioner, in legal effect, had promised to pay the bank the amount due on the mortgage, and that he did not act in good faith in purchasing the lands from the mortgagors, but in doing that intended to defraud the bank. There is, however, nothing in the contention that the petitioner had promised to pay the bank. The clause in the deed, which was the only obligation assumed by the petitioner, was set forth in the bank's complaint. The petitioner did not promise to pay anything or any one, but, as it is expressed in the deed, he bought the land subject to all liens existing against it. The bank did, however, not seek to recover the amount secured by the mortgage from the petitioner, but what it sought to do was to reform the mortgage, and after it was reformed to subject the Idaho lands to the payment of the mortgage debt notwithstanding any claim that the petitioner preferred against said lands. The bank, after having succeded in having the mortgage reformed, and having it declared a first lien on the Idaho lands, sought more, and the court granted it more, and in doing so the court exceeded its powers and jurisdiction. To the extent, therefore, that the court exceeded its jurisdiction, as hereinbefore explained, the orders of the court are void and of no effect. The judgment committing the petitioner for contempt is therefore void and of no force or effect.

The judgment of this court, therefore, is that the petitioner be, and he hereby is, discharged from further restraint and that he recover his costs of this proceeding.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.